Frank J. NELSON, Appellant,

v.

DATA TERMINAL SYSTEMS, INC., et al., Appellees.

No. 04–87–00426–CV.

Court of Appeals of Texas, San Antonio.

Dec. 21, 1988.

Rehearing Denied Jan. 13, 1989.

Sam C. Bashara, Law Offices of Sam C. Bashara, San Antonio, for appellant.

James Ingram, Jonathan D. Pauerstein, McCamish, Ingram, Brown & Loeffler, San Antonio, for appellees.

Before CADENA, C.J., and ESQUIVEL and DIAL\*, JJ.

## OPINION

ESQUIVEL, Justice.

We deny appellant's motion for rehearing. However, our former opinion of August 17, 1988, is withdrawn and the following opinion is substituted therefor.

This is an appeal from an order granting a motion for instructed verdict and resulting in a take nothing judgment in a breach of contract/DTPA violation case. We affirm.

Appellant, Frank J. Nelson (Nelson), and appellee Data Terminal Systems, Inc. (DTS) executed a one year term Standard Dealers Sales Agreement for the period November 1, 1977, to November 1, 1978, wherein DTS appointed Nelson as a dealer for the sale, installation and servicing of certain specified DTS products, and parts and equipment therefor in a specified territory in Texas. The contract further provided that either party could terminate the agreement at the end of the yearly period upon not less than thirty (30) days prior written notice to the other. The contract was terminated by DTS under such termination provision.

Nelson originally sued DTS for breach of contract and violations of the Texas Deceptive Trade Practices and Consumer Protection Act, TEX.BUS. & COM.CODE ANN. § 17.41–17.63 (Vernon 1987), (hereinafter DTPA). That case, which we shall call *Nelson I*, was the subject of a previous appeal before a panel of this Court. *See Nelson Cash Registers, Inc. v. Data Terminal Systems, Inc.*, 671 S.W.2d 594 (Tex. App.—San Antonio 1984, no writ). In *Nelson I* this Court, in its consideration of DTS's cross-point assailing the award of damages to Nelson, held that the evidence was insufficient to support the jury's finding that DTS's failure to perform the contract in question was a proximate cause of Nelson's damages, and reversed and remanded the case to the trial court for a new trial. It is further noted that in *Nelson I* the jury instruction to consider only the diminution in value of Nelson's business in arriving at Nelson's damages was assailed by DTS as an improper measure of damages, but this Court held that such error was not preserved and overruled the cross-point.

The retrial of this case resulted in this appeal.[1]

Nelson's trial pleadings (plaintiff's Ninth Amended Original Petition) allege theories of recovery predicated upon breach of con-

---

1. Nelson Cash Registers, Inc. assigned its interests to Frank J. Nelson after remand of *Nelson I.*

tract and the unconscionability provision of DTPA. *See* § 17.50(a)(3). At trial, in support of his pleaded theories, Nelson offered proof of inadequate training of his personnel by DTS; the furnishing of defective equipment to him by DTS; the failure of DTS to ship equipment or components ordered by Nelson; the failure of DTS to timely repair equipment sent to DTS by Nelson for repairs; the failure of DTS to consult with Nelson before setting Nelson's annual quota for his purchase of DTS products and sale of such products to users for the contract period; and DTS's failure to deal with Nelson in a fair and equitable manner. Additionally Nelson plead and offered proof of diminution of value of his business as damages, as opposed to lost profits, in support of his theories of breach of contract and violation of DTPA.

After the close of the evidence the jury was instructed in regard to the DTPA cause of action to consider whether DTS engaged in any unconscionable action or course of action against Nelson; whether the action of DTS was a producing cause of damages to Nelson; and the amount of damages resulting therefrom. In regard to the breach of contract cause of action the jury was instructed to consider whether DTS breached its contract of November 1, 1977, with Nelson and, if so, the amount of money that would compensate Nelson for his actual damages caused by the breach of contract.

The jury deadlocked, and after it was discharged but before a mistrial had been granted, the trial court considered and granted DTS's re-urged motion for instructed verdict. DTS urged in its motion that proof of diminution of value was not an appropriate measure of damages and that it was entitled as a matter of law to a finding on the damage issue that no damages were proximately caused by any breach of contract. DTS further urged in its motion that it was entitled to an instructed verdict on the special issue which inquired as to Nelson's DTPA cause of action because Nelson was not a "consumer" entitled to standing under the DTPA and that the "alleged 'unconscionable course of action' was not shown to have been the producing cause of any damages" to Nelson. This appeal followed after a take nothing judgment was entered in favor of DTS.

Nelson presents us with three points of error. In the first and second points of error Nelson complains of the trial court's action in sustaining DTS's motion for instructed verdict and holding as a matter of law that Nelson "failed to prove damages for its cause of action for breach of contract" and that Nelson "has failed to prove any violations of DTPA has caused damages to" Nelson. In his third point of error Nelson contends that the trial court erred in failing to grant its motion for mistrial.

First, we consider Nelson's points of error one and two assailing the trial court's action of granting DTS's motion for instructed verdict.

Since the alleged deceptive acts occurred from November 1, 1977, to November 1, 1978, the DTPA provisions in effect before the 1979 amendments to the Act are applicable. *See Riverside National Bank v. Lewis*, 603 S.W.2d 169, 172 (Tex.1980). All references hereinafter to DTPA will be to the DTPA in effect before the 1979 amendments.

Section 17.50(a) of the DTPA provided that only a consumer who has been adversely affected by certain actions specified thereunder had standing to sue. Our first consideration under appellant's point of error two therefore is to determine whether Nelson was a "consumer" within the meaning of the DTPA. Section 17.45(4) defined "consumer" as "an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services." We hold that Nelson was a consumer under the DTPA. *See Big H. Auto Auction, Inc. v. Saenz Motors*, 665 S.W.2d 756 (Tex.1984).

DTS advanced two arguments in support of its motion for instructed verdict: Nelson was not a consumer, and Nelson had not shown that any DTPA violation caused his damages.

Nelson had the burden to plead and prove that he was a consumer under the DTPA in that (1) he sought or acquired goods or services by purchase or lease; and (2) the goods or services he sought or acquired form the basis of his complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981). It is undisputed that Nelson purchased equipment manufactured by DTS for sales and installation of such equipment to customers in his designated area and further that DTS repaired components, parts or equipment for Nelson's use in the servicing and or repairs of any of DTS's products in the area upon Nelson's request.

On appeal, Nelson argues that the following testimony showed that the DTPA violations caused damages to Nelson:

Q: Now, Mr. Nelson, from the date that Nelson Cash Register first entered into its contract with DTS to be its dealer in 1975 until it was terminated in November of 1978, did Nelson Cash Register purchase or seek to purchase tangible goods or chattels from DTS such as cash register parts?

A: Yes, we did.

Q: And from the date that Nelson Cash Register first contracted with DTS to be its dealer in 1975 until it was terminated in November of 1978, did Nelson Cash Register purchase or seek to purchase services from DTS such as repair of cash registers and cash register components and parts?

A: Yes, we did.

Q: Was the relationship of Nelson Cash Register in connection with the purchase of these goods and services that you have told us about controlled in part by the 1975 dealer franchise agreement or dealer agreement and later by the 1977 agreement?

A: Yes, they were.

Q: Had DTS told you—if DTS had told you in November of 1977 that they intended to double your quota for the following year, would have signed the 1977 agreement.

A: No.

Q: All right. Now because of the situation that you were faced with there in 1978 during the course of the year 1978, was your customer base eroded?

A: Our potential customer base was eroded, yes.

Q: And as a result of your dealership being terminated, as a result of the termination or cancellation or non-renewal, whatever you want to call it, as a result of that, did you lose the value of your working capital that you had invested in DTS inventory, tools, and equipment?

A: Yes, it was.

Nelson's proof was that his damages were caused by the non-renewal of the agreement. Therefore, Nelson did not show that his damages were caused by any DTPA violation concerning the goods or services alleged in the petition.[2] The second point of error is overruled.

The issue presented by Nelson's point of error number one is whether diminution of value of his business was a proper measure of damages in his breach of contract cause of action. DTS contends that diminution of value in support of Nelson's breach of contract cause of action is

---

2. Appellant cites *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.), to show he was a consumer. In *Woo*, a distributorship contract was treated as a good or service for DTPA purposes. Here, however, appellant did not allege that he was a consumer of a franchise agreement. Instead, appellant plead the following:

A. The Defendant, at all times relevant to these proceedings, was in the business of manufacturing and selling cash registers and related equipment along with providing for servicing of the same, which constituted a "good" under Tex.Bus. & Com.Code § 17.45(1), and a "service" under Tex.Bus. & Com.Code § 17.45(2), respectively.

B. At all relevant times, Plaintiff was a consumer of the aforementioned goods and services within the meaning of Tex.Bus. & Com.Code § 17.45(4), and sought to acquired and did acquire, by the purchase thereof, such cash registers and related equipment along with the accompanying services.

not a proper measure of damages. We agree with DTS and conclude that as a matter of law DTS was entitled to a finding on the damages issue that no damages were proximately caused to Nelson by any breach of the contract in question by DTS.

Nelson cites *Sawyer v. Fitts*, 630 S.W.2d 872, 874–75 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.) and *Gulf Atlantic Insurance Co. v. Hurlbut*, 696 S.W.2d 83, 99 (Tex.App.—Dallas 1985), *rev'd on other grounds*, 749 S.W.2d 762 (Tex.1987), in support of its contention that diminution of value of its business is a proper measure of damages in its breach of contract cause of action. Nelson's reliance on these cases is misplaced. These cases concern damages for the destruction of a business by the tortious act of another. They do not concern diminution of the value of a business as the measure of damages available to redress an alleged breach of contract. *Sawyer* is a tort case regarding the collapse of a wall and *Gulf* is a slander/libel case.

The general rule is that any damages that might be recovered for breach of contract must be measured by the amounts of profits lost as a result of the breach. However, an injured party may, if he so chooses, ignore the element of profits and recover as damages his expenditures in reliance. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 347, 349 (1981). Actual damages are either general or special. The term "general damages" is applied to loss, damage, or injury which is conclusively presumed to have been foreseen or contemplated by the party as a consequence of his breach of contract or wrongful act, whereas "special damages" signifies injurious consequences which are not deemed as a matter of law to have been foreseen, but which are shown to have been contemplated or anticipated by the parties. *First National Bank of Hico v. English*, 240 S.W.2d 503, 507 (Tex.Civ.App.—Waco 1951, no writ).

The diminution in value of Nelson's business cannot be conclusively presumed to have been foreseen or contemplated by DTS as a consequence of DTS's breach of the contract. Therefore, the loss in value of the business is not a type of "general damages." Further, there was no evidence that diminution in value of Nelson's business was contemplated or anticipated by Nelson and DTS. The loss is not a "special damage."

■ Additionally, business reputation is a major factor which usually is included in loss of value or diminution of a business. We have found two Texas cases that have held that damages to a plaintiff's business reputation are not recoverable as actual or special damages in a breach of contract case. *See Sterling Projects Inc. v. Fields*, 530 S.W.2d 602 (Tex.Civ.App.—Waco 1975, no writ); *Streetman v. Lasater*, 185 S.W. 930 (Tex.Civ.App.—El Paso 1916, no writ).

■ We conclude that diminution of value of Nelson's business due to a breach of contract was not an appropriate measure of damages. Nelson only offered proof of the diminution of his business. Accordingly, we hold that the trial court did not err in granting DTS's motion for instructed verdict. The point of error is overruled.

Nelson's final point of error urges:
THE TRIAL COURT ERRED IN FAILING TO GRANT HIS MOTION FOR MISTRIAL.

Nelson's entire argument and authorities in support of his point of error as set out in his brief states:

When a jury deadlocks on ultimate, factual issues which are supported by legally sufficient evidence the court should declare a mistrial. *Fleet v. Fleet*, 711 S.W.2d 1, 3 (Tex.1986).

We are reluctant to hold that Nelson has failed to comply with TEX.R.APP.P. 74 because of our duty to liberally construe these rules. Accordingly, we construe Nelson's point of error as raising the issue of whether the trial court had the power to grant an instructed verdict after the jury was discharged because of its inability to reach a verdict instead of declaring a mistrial.

■ "It is well established in Texas that where a jury is unable to agree upon a verdict and has been discharged, but no

order of mistrial has been entered, the trial judge may reconsider a motion for instructed verdict and act upon same." *Clevenger v. Liberty Mutual Insurance Co.*, 396 S.W. 2d 174, 176 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.) and cases cited therein. This is exactly the action taken by the trial judge in the case before us.

Because of our disposition of Nelson's first two points of error, we hold that the evidence was legally insufficient to support his issues on the DTPA cause of action and damages for breach of contract. We overrule Nelson's third point of error.

All of Nelson's points of error having been overruled, the judgment is affirmed.