UMLIC VP LLC, Appellant,

v.

T & M SALES AND ENVIRONMEN-TAL SYSTEMS, INC., Tomas Lozano, Perla Lozano, and Walter M. Ezell, Appellees.

No. 13–02–00634–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Sept. 15, 2005.

Rehearing Overruled Nov. 10, 2005.

Beverly A. Whitley, Bell, Nunnally & Martin L.L.P., Dallas, for appellant.

Rene B. Gonzalez, Asst. Dist. Atty., Brownsville, Ruben R. Pena, Law Office of Ruben R. Pena, P.C., Harlingen, for appellees.

Before Justices HINOJOSA, RODRIGUEZ, and GARZA.

## OPINION

Opinion by Justice HINOJOSA.

Appellant, UMLIC VP LLC ("UMLIC"), sued appellees, T & M Sales and Environmental Systems, Inc. ("T & M"), Tomas and Perla Lozano,[1] and Walter M. Ezell,[2] to recover the overdue balance on a note and guaranty agreement. Appellees asserted the affirmative defense of wrongful foreclosure and counter-claimed for breach of contract and negligence. After a jury found in favor of appellees, the trial court signed a judgment against UMLIC. UMLIC challenges the trial court's judgment by twenty-eight issues. We reverse and render in part. The remaining part of the trial court's judgment is reformed and, as reformed, is affirmed.

## A. FACTUAL BACKGROUND

On July 19, 1989, T & M obtained a business loan from the Small Business Administration ("SBA") in the amount of $150,000. Under the terms of the promissory note, T & M agreed to pay $1,992 per month for ten years, with a balloon payment for the unpaid principal being due and payable at the end of the ten-year period. The note was secured by a deed of trust on the land on which T & M was located, a security agreement, and a guaranty executed by the Lozanos and Ezell in their personal capacities. The note matured by its own terms on July 19, 1999. The last payment T & M made on the note was on November 19, 1998. The parties stipulated that as of that date, the remaining principal balance was $49,602.24.

On October 15, 1999, UMLIC purchased the note, deed of trust, security agreement, and guaranty from the SBA. In January 2000, Tomas Lozano contacted UMLIC and offered to continue making

---

1. T & M was founded, owned, and operated by Tomas and Perla Lozano. The Lozanos are involved in this action both as representatives of the corporation and in their individual capacities.

2. At the time of this suit, Ezell no longer worked for T & M and had agreed with the Lozanos that any findings or awards for or against him would be assumed by the Lozanos. He did not participate in the suit.

payments on the note in the amount of $1,000 per month. UMLIC rejected the offer and decided to pursue foreclosure. UMLIC never informed appellees of its intention to foreclose.

In preparation of the contemplated foreclosure, UMLIC conducted a title search on the property secured by the deed of trust. During the search, UMLIC discovered that local taxing authorities had foreclosed on the property because appellees had failed to pay property taxes. On February 1, 2000, the sheriff sold the property at a public auction to Pablo Gonzalez for $10,000. On June 6, 2000, UMLIC redeemed the property from Gonzalez for $12,500, the amount Gonzalez had paid for the property plus the statutory twenty-five percent penalty. Gonzalez then executed a special warranty deed in favor of UMLIC.

On July 24, 2000, UMLIC sent T & M a notice to vacate the property.[3] On August 25, 2000, UMLIC offered to let T & M redeem the property, on the condition that T & M also pay the balance due on the note. On October 9, 2000, UMLIC filed a petition for forcible detainer in justice court, seeking possession of the property. By letter dated October 20, 2000, T & M tendered a cashier's check in the amount of $12,500 to UMLIC in an attempt to redeem the property, but T & M made no attempt to pay the note. UMLIC rejected the offer and returned the check. On November 3, 2000, the justice court granted UMLIC possession of the property.

On February 16, 2001, UMLIC made demand for payment on the note and guaranty, but it received no response. On March 6, 2002, UMLIC sold the property to LSS Investments, Inc. for $66,000. UMLIC did not credit the amount received at the sale to the balance due on the note. On June 11, 2001, UMLIC filed the underlying suit to collect the unpaid principal balance and interest. T & M filed a counterclaim, alleging both tort and contract violations.

The jury found against UMLIC on both the note and the guaranty. The jury further found in favor of T & M and the Lozanos on their counterclaims of wrongful foreclosure, negligence, breach of the deed of trust, fraud, and malice. UMLIC filed a motion for judgment notwithstanding the verdict, which the trial court denied. Based on the jury's findings, the trial court's judgment awarded T & M the fair market value of the property as determined by the jury, damages for loss of business reputation, and exemplary damages. The judgment also included damages to Tomas and Perla Lozano for mental anguish. UMLIC subsequently filed motions to modify the judgment, for a new trial, and remittitur. The trial court denied the motions. This appeal followed.

## B. FRAUD

In its second issue, UMLIC contends the trial court erred in submitting a question to the jury on the issue of fraud because appellees failed to sufficiently plead fraud as a cause of action and the issue was not tried by consent.

### 1. *Sufficiency of Pleadings*

A pleading should "consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense." TEX. R. CIV. P. 45(b). The purpose of pleadings is "to give the adverse parties [fair] notice of each party's claims and defenses, as well as notice of the relief sought." *Woolam v.*

---

**3.** T & M stayed in possession of the property for several months after receiving the notice to vacate.

*Tussing,* 54 S.W.3d 442, 447 (Tex.App.-Corpus Christi 2001, no pet.) (citing *Perez v. Briercroft Serv. Corp.,* 809 S.W.2d 216, 218 (Tex.1991)); *see* TEX. R. CIV. P. 47(a). A pleading provides sufficient fair notice of the claim involved when "an opposing attorney of reasonable competence could examine the pleadings and ascertain the nature and basic issues of the controversy and the relevant testimony." *Woolam,* 54 S.W.3d at 448 (citing *State Fid. Mortgage Co. v. Varner,* 740 S.W.2d 477, 478 (Tex. App.-Houston [1st Dist.] 1987, writ denied)).

■ In determining whether a cause of action was pleaded, the pleadings must be sufficiently adequate so the court is able, from an examination of the pleadings alone, to ascertain with reasonable certainty and without resorting to information from another source, the elements of a plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment. *Id.* (citing *Stoner v. Thompson,* 578 S.W.2d 679, 683 (Tex.1979)). Petitions are construed liberally in favor of the pleader. *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 186 (Tex.1977). "The court will look to the pleader's intendment" and uphold the pleading as to a cause of action even if some element of that cause of action has not been specifically alleged. *Gulf, C. & S.F. Ry. Co. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963); *see Boyles v. Kerr,* 855 S.W.2d 593, 601 (Tex.1993) (op. on reh'g). "Every fact will be supplied that can reasonably be inferred from what is specifically stated." *Bliss,* 368 S.W.2d at 599. "Mere formalities, minor defects and technical insufficiencies" will not invalidate a cause of action in a petition, so long as the pleading gives fair notice to the opposing party. *Stoner,* 578 S.W.2d at 683.

■ A cause of action for fraud requires (1) a material misrepresentation, (2) which was either known to be false when made or was asserted without knowledge of its truth, (3) was made with the intention that it be acted upon by the other party, (4) the other party acts in reliance upon it, and (5) the other party suffers harm as a result of that reliance. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001). Fraud may also occur when (1) a party conceals or fails to disclose a material fact within their knowledge, (2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact, and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Id.* at 755–56.

■ Appellees's pleadings do not specifically allege that UMLIC committed fraud. Appellees argue that a cause of action for fraud can be deduced from their pleadings. In support of their argument, appellees direct our attention to certain sections of their petition. In relevant part, these sections provide:

(A) ... The subsequent actions undertaken by [UMLIC] were in violation of the Texas Finance Code in that the actions were usurious and constituted wrongful debt collection practices as defined in the Texas Finance Code. [T & M] not having had proper notice of the foreclosure or sale were never advised by [UMLIC] of the redemption of the property until after the expiration of 180 days. [UMLIC] then took the position that T & M's time for redemption of the property permitted under Texas law had expired. [UMLIC] then wrongfully and illegally filed a forcible entry and detainer action in the justice of the peace court, wherein UMLIC obtained possession of the premises, causing [T & M] to

vacate their long established business premises. Finally, on or about March 6, 2002, UMLIC sold the property the subject of this suit. . . .

* * * *

(C) [UMLIC] owed [T & M] a duty of good faith and fair dealing which it breached in failing to properly accelerate and give proper notice of its intention to accelerate the note and debt, in failing to accept the payment of $12,500 which amount was the sum [UMLIC] paid to redeem the property from the buyer at the sheriff's sale. . . .

■ While the pleadings must be construed as favorably as possible to the pleader, the inference that a cause of action has been pleaded must be reasonable in light of what is specifically stated in the pleading. *See Boyles,* 855 S.W.2d at 601. In this case, we conclude that a cause of action for fraud is not an inference that reasonably results from the statements contained in appellees' petition. The statements, pointed out by appellees as alleging a cause of action for fraud, are spread throughout the petition and are contained in sections dedicated to pleading other causes of action. We find nothing in the petition that gave fair notice to UM-LIC that appellees were asserting a cause of action for fraud. Accordingly, we hold that appellees failed to plead fraud as a cause of action.

### 2. *Trial by Consent*

■ If an issue not raised by the pleadings is tried by the express or implied consent of the parties, it is treated as if it had been raised by the pleadings. TEX. R. CIV. P. 67. However, "[t]he rule of trial by consent is limited to those exceptional cases where the parties clearly tried an unpleaded issue by consent." *Libhart v. Copeland,* 949 S.W.2d 783, 797 (Tex.

App.-Waco 1997, no writ.) (citing *White v. Sullins,* 917 S.W.2d 158, 160 (Tex.App.-Beaumont 1996, writ denied)). The rule should be cautiously applied and should not be applied in doubtful situations. *Id.* An objection to the submission of a jury question on an unpleaded issue prevents the trial of that issue by implied consent. *Id.* (citing *Harkey v. Tex. Employers' Ins. Ass'n,* 146 Tex. 504, 208 S.W.2d 919, 922 (1948)). If a complaining party does not object to testimony on the issue but does object to its submission on some tenable ground, "he cannot be regarded as impliedly consenting that [it] be tried when not raised by the pleadings." *Harkey,* 208 S.W.2d at 922.

■ In this case, although evidence relevant to the issue of fraud may have been submitted without objection, UMLIC objected to the submission of a jury question on the issue of fraud because it was not supported by any pleading and served as a surprise to UMLIC. Such a situation prevents the implication that the issue was tried by consent. *See Harkey,* 208 S.W.2d at 923; *Marine Creek Partners v. Caldwell,* 926 S.W.2d 793, 796 (Tex.App.-Fort Worth 1996, no writ); *Morton v. Humber,* 399 S.W.2d 831, 832 (Tex.Civ.App.-Eastland 1966, no writ). Therefore, we hold that the issue of fraud was not tried by consent. Appellant's second issue is sustained.

### C. FORECLOSURE

In its thirteenth issue, UMLIC asserts that when it redeemed the property, it became vested with fee simple title. As the owner, UMLIC argues, it was not required to execute foreclosure proceedings before selling the property, nor to apply proceeds from the sale to the amount due on the note.

### 1. *Title After Redemption*

■ In sub-issue (a) of its thirteenth issue, UMLIC contends the trial court erred in finding that it did not acquire fee simple title to the property. Whether redemption of property by a mortgagee under section 34.21 of the Texas Tax Code results in fee simple title is an issue of statutory construction. It is, therefore, a question of law that we review de novo. *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 312 (Tex.1999).

When property is sold at a tax sale, the deed purchased vests "good and perfect title in the purchaser or the purchaser's assigns," including the right to the use and possession of the property, subject only to the former owner's right to redemption. TEX. TAX CODE ANN. § 34.01(n) (Vernon Supp.2004-05). Under the right to redemption, an owner may redeem the property by paying the purchaser the amount bid for the property, the deed recording fee, and any taxes, penalties, interest, or costs on the property, plus a premium of twenty-five percent. TEX. TAX CODE ANN. § 34.21(e), (e)(2). Payment must be made no later than 180 days after the day the deed is filed for record. TEX. TAX CODE ANN. § 34.21(e)(1). UMLIC argues that because Gonzalez became vested with good and perfect title to the property at the tax sale, when Gonzalez assigned a special warranty deed to UMLIC, UMLIC purchased and received all of the same rights in the property that Gonzalez had acquired.

■ UMLIC now argues for rights of a "purchaser." However, at the time of the transaction, UMLIC did not attempt to "purchase" the property from Gonzalez. In its letter to Gonzalez, UMLIC clearly stated it was exercising its statutory right to redeem the property and enclosed a cashier's check for $12,500, the statutorily-determined amount. In a sale, Gonzalez would have had the ability to negotiate price and decide whether he wanted to sell or not sell. In a redemption, Gonzalez had no choice but to transfer the property to the redeemer for the statutorily-determined price.

■ When an owner of real property tenders an appropriate payment before the end of the redemption period, he effectually extinguishes the rights of the purchaser at the tax sale. *State v. Moak,* 146 Tex. 322, 207 S.W.2d 894, 896–97 (1948); *Burkholder v. Klein Indep. Sch. Dist.,* 897 S.W.2d 417, 420 (Tex.App.-Corpus Christi 1995, no writ). If an owner of property complies with the requirements of the statute, a purchaser at a tax sale may not prevent the owner from redeeming the property. *See* TEX. TAX CODE ANN. § 34.21(f) (Vernon Supp.2004-05) (If "the owner and the purchaser cannot agree on the amount of redemption money due, or ... the purchaser refuses to give the owner a quitclaim deed to the property, the owner may redeem the land by paying the required amount ... to the assessor-collector for the county....").

■ Because UMLIC made no actual attempt to purchase the property, we conclude the status of UMLIC's title does not depend on whether a mortgagee would be eligible to purchase fee simple title to property at or subsequent to a tax sale, but on what title a mortgagee holds after it redeems property under the redemption statute. Redemption does not operate in the same manner as a purchase. Unlike the purchase of real property, redemption does not establish new title; it restores the parties to the position they were in before the lien. *Assoc. Home Equity Serv. Co., Inc. v. Hunt,* 151 S.W.3d 559, 561–62 (Tex. App.-Beaumont 2004, no pet.); *Bente v. Sullivan,* 52 Tex.Civ.App. 454, 115 S.W. 350, 353 (1908, writ ref'd) ("Redemption

gives no new title; it simply relieves the land from the sale which has been made. . . .").

█ Redemption statutes are construed liberally in favor of the right to redeem. *See Jackson v. Maddox,* 53 Tex. Civ.App. 478, 117 S.W. 185, 185 (1909, no writ) (quoting *Dubois v. Hepburn,* 35 U.S. (10 Pet.) 1, 9 L.Ed. 325 (1836)). "[A]ny person who has any interest in lands sold for taxes" is considered an owner for the purposes of redemption. *Rogers v. Yarborough,* 923 S.W.2d 667, 669 (Tex.App.-Tyler 1996, no pet.); *Jackson,* 117 S.W. at 185. To redeem, a party need only show "some connection with the title, past or present, by deed, descent, contract, or possession." *Jackson,* 117 S.W. at 185. Proof of title is not necessary. *Id.*

█ In applying the redemption statute, where one co-owner redeems property from a tax foreclosure sale, courts have concluded that it does not divest any other co-owner of his ownership interest in the property. *See Reynolds v. Batchelor,* 216 S.W.2d 663, 667 (Tex.Civ. App.-Fort Worth 1948, writ ref'd n.r.e.); *Bush v. Bush,* 275 S.W. 1096, 1097 (Tex. Civ.App.-Waco 1925, no writ). The action of a co-owner in redeeming the property is considered as being for the benefit of all co-owners. *Poenisch v. Quarnstrom,* 361 S.W.2d 367, 372 (Tex.1962) (citing *Bush,* 275 S.W. at 1097). The general rule in such circumstances is that a person who is under an existing legal or contractual obligation to another to pay taxes on property, but omits to pay such taxes, "cannot be allowed to strengthen his title to such land by buying in the tax title when the property is sold as a consequence of his omission. . . ." *Reynolds,* 216 S.W.2d at 667 (quoting 51 Am.Jur. 919). Nor can such a party strengthen his title by redeeming title from a third party subsequent to the sale. *Id.* (citing 51 Am.Jur. 955); *see*

*Bush,* 275 S.W. at 1097. This rule includes parties who, while not legally obligated to pay taxes, have sufficient interest in the property that they might redeem it to protect themselves from loss or injury, or to establish a preferred lien. *See Reynolds,* 216 S.W.2d at 667. In these situations, equity requires the protection of the rights of other owners or lien holders. *Id.*

The instant case differs in that UMLIC was under no legal obligation to pay the taxes on the property. Further, because neither UMLIC nor the SBA were joined as parties to the tax foreclosure suit, it was not necessary for UMLIC to pay the taxes to protect its security interest. *See Murphee Prop. Holdings, Ltd. v. Sunbelt Sav. Ass'n of Tex.,* 817 S.W.2d 850, 852 (Tex. App.-Houston [1st Dist.] 1991, no writ) (holding that a lien holder who is not served and joined as a party to a tax suit cannot have his lien extinguished by the tax sale).

█ Although UMLIC's security interest in the property did not create any legal obligation, it was only by virtue of this pre-existing interest that UMLIC was eligible to complete the redemption transaction. *See Reynolds,* 216 S.W.2d at 668; *see also State Mortgage Corp. v. Groos,* 12 S.W.2d 260, 262 (Tex.Civ.App.-San Antonio 1928, writ dism'd w.o.j.). Under the liberal interpretation applied to redemption statutes, the security interest is sufficient to qualify UMLIC as an owner for purposes of redemption. *See Jackson,* 117 S.W. at 185–86. However, the designation of "owner" under the statute which allowed UMLIC to redeem the property, also prevents it from divesting other "owners" of their interest in the property. *See Reynolds,* 216 S.W.2d at 667. The redemption statute, in effect, classifies UMLIC and T & M as "co-owners" of the property, and UMLIC is equitably estopped from claiming that it did anything

other than redeem the property. *Id.* The redemption operated solely as payment of the taxes and discharge of the tax lien; title to the property remained as it was before the tax sale. *See id.; Hunt,* 151 S.W.3d at 562. Consequently, UMLIC did not strengthen its title by virtue of the redemption. Before the tax sale, UMLIC's interest in the property was limited to its rights under the deed of trust. This interest is what UMLIC redeemed and the only interest that UMLIC retained. *See Hunt,* 151 S.W.3d at 562.

Accordingly, we conclude the trial court did not err in finding that UMLIC did not acquire fee simple title to the property by virtue of the redemption. Sub-issue (a) of appellant's thirteenth issue is overruled.

### 2. *Jury Instructions*

In its fourteenth issue, UMLIC contends the trial court wrongfully commented on the weight of the evidence by assuming disputed facts. Specifically, UMLIC complains of the court's instruction in Question 4 of the jury charge. Question 4 provides:

> Did UMLIC VP, L.L.C. wrongfully foreclose on the property owned by T & M Sales?
>
> A wrongful foreclosure occurs when the holder of a note and deed of trust fails to give proper notice of foreclosure under the deed of trust and improperly sells the property. You are further instructed that a purchaser in a redemption proceeding does not vest fee simple title in the purchaser at the redemption proceeding if the purchaser is also the holder of the deed of trust.

The rules of civil procedure provide that "[t]he court shall not in its charge comment directly on the weight of the evidence." TEX. R. CIV. P. 277. In order to be a direct comment on the weight of the evidence, the issue must

suggest to the jury the trial court's opinion on the matter submitted. *H.E. Butt Grocery Co. v. Bilotto,* 985 S.W.2d 22, 24 (Tex. 1998); *Frank B. Hall & Co. v. Beach, Inc.,* 733 S.W.2d 251, 264 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.). A submission to the jury is objectionable if it assumes a disputed fact in issue. *Frank B. Hall,* 733 S.W.2d at 264. However, a court's charge "shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence ... when it is properly a part of an instruction or definition." TEX. R. CIV. P. 277. All of UMLIC's objections to Question 4 are based on UMLIC's assertion that by virtue of its redemption of the property, it acquired fee simple title. As we discussed above, the resolution of this issue was a matter of statutory construction. Matters of statutory construction are legal questions for the court to decide. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 357 (Tex.2000). Only issues of fact are to be submitted to the jury; questions of law are the province of the court. *Hercules Exploration, Inc. v. Halliburton Co.,* 658 S.W.2d 716, 724 (Tex. App.-Corpus Christi 1983, writ ref'd n.r.e.); *Barton v. Davis,* 441 S.W.2d 299, 301 (Tex. Civ.App.-El Paso 1969, writ ref'd n.r.e.). An issue that involves the determination of a matter of law should not be submitted to the jury. *Walker v. Fed. Kemper Life Assurance Co.,* 828 S.W.2d 442, 451 (Tex. App.-San Antonio 1992, writ denied); *Hercules Exploration,* 658 S.W.2d at 724. Therefore, the trial court was correct in resolving the issue of title to the property as a matter of law and instructing the jury in accordance with that resolution. Appellant's fourteenth issue is overruled.

### 3. *Adequacy of Pleading*

In sub-issue (c) of its thirteenth issue, UMLIC contends appellees

failed to plead wrongful foreclosure as a cause of action. Any matter constituting an affirmative defense or avoidance must be "set forth affirmatively." TEX. R. CIV. P. 94. An affirmative defense must be stated in sufficient detail to give the plaintiff fair notice of what the defensive issues and relief sought will be in the trial. *See* TEX. R. CIV. P. 47(a); *Woolam,* 54 S.W.3d at 447; *J.K. & Susie L. Wadley Research Inst. and Blood Bank v. Beeson,* 835 S.W.2d 689, 693 (Tex.App.-Dallas 1992, writ denied). We construe the petition liberally in favor of the pleader, *Stone,* 554 S.W.2d at 186, and will not invalidate a cause of action due to minor defects or technical deficiencies. *Stoner,* 578 S.W.2d at 683.

■ In their third amended answer, after their denial, appellees asserted: "By way of further answer the [appellees] would show ... [that UMLIC] failed to give notice of foreclosure, that it failed to foreclose on the subject property, and that its sale of the subject property was without such notice as required by law and [UMLIC's] efforts to collect on the unjust debt are wrongful and illegal." We consider these statements sufficient to affirmatively set out and give fair notice of an intent to pursue a claim of wrongful foreclosure and seek damages. Sub-issue (c) of appellant's thirteenth issue is overruled.

### 4. *Sufficiency of the Evidence*

■ In sub-issue (b) of its thirteenth issue, UMLIC contends the evidence is legally and factually insufficient to sustain a judgment on wrongful foreclosure. UMLIC's challenge to the jury's finding on this point is again based on UMLIC's assertion that after redeeming the property from Gonzalez, UMLIC had fee simple title to the property, and as fee simple owner it was not required to go through any foreclosure proceedings. However,

because we have already determined that, as a matter of law, UMLIC did not acquire fee simple title to the property, UMLIC's rights to the property were limited to those rights contained in the deed of trust.

■ For a sale under a deed of trust to be valid, the terms set out in the deed of trust must be strictly followed. *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.,* 644 S.W.2d 705, 706 (Tex.1982) (citing *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671 (1942)); *Bonilla v. Roberson,* 918 S.W.2d 17, 21 (Tex.App.-Corpus Christi 1996, no writ) ("Because a power of sale in a deed of trust is such a harsh method of collecting debts and of disposing of another's property, it can only be exercised by strict compliance with the note and conditions of sale.").

■ Appellees claimed that UMLIC wrongfully foreclosed on the property because UMLIC did not send notice of a trustee's sale, as provided for in the deed of trust and required under section 51.002(b) of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 51.002(b) (Vernon Supp.2004). At trial, UMLIC admitted that it had not sent any notice of a foreclosure to T & M or to the Lozanos. We hold this judicial admission to be legally and factually sufficient evidence to support the jury's finding that UMLIC wrongfully foreclosed on the property. Sub-issue (b) of appellant's thirteenth issue is overruled.

### 5. *Damages*

■ In sub-issue (e) of its thirteenth issue, UMLIC contends the trial court submitted the wrong measure of damages for wrongful foreclosure to the jury, and thus the award of damages should be reversed. The trial court's judgment specifies the entire amount found by the jury to be the fair market value of the property as wrongful foreclosure actual damages.

Failure to properly foreclose on property gives rise to a cause of action for either the return of the property or damages. *See · Univ. Sav. Ass'n*, 644 S.W.2d at 706; *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 21 (Tex.App.-Corpus Christi 1993, no writ) (op. on reh'g). The correct measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness. *Durkay*, 862 S.W.2d at 21 (citing *Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex. 1986)). It is the burden of the complaining party to prove the amount of indebtedness at the time of foreclosure. *Id.* The jury found the fair market value of the property at the time it was sold by UMLIC to be $79,600. However, neither the trial court nor the jury calculated the amount of indebtedness due at the time of the sale. *See Farrell*, 714 S.W.2d at 300 (concluding in wrongful foreclosure suit, court cannot render damages without evidence of how much remains due on the note).

Nevertheless, the record shows the various elements constituting the total amount of indebtedness at the time of foreclosure are undisputed. *See GXG, Inc. v. Texacal Oil & Gas*, 977 S.W.2d 403, 422 (Tex.App.-Corpus Christi 1998, pet. denied) (noting that there was sufficient evidence in the record to allow the court to determine the correct balance due on a note).

The trial court received into evidence, without objection, the promissory note, the deed of trust, and the guaranty agreement. At trial, the parties stipulated that as of November 19, 1998, the principal balance remaining on the note was $49,602.24. The note provides for simple interest at the rate of ten percent per annum. Interest accrued for 1,203 days.[4] At the rate of ten percent per annum, the per diem inter-

est is $13.59, resulting in total accrued unpaid interest of $16,348.77.

In addition, UMLIC paid $12,500 to Gonzalez to redeem the property after the tax foreclosure sale. Under the terms of the deed of trust, UMLIC was entitled to recoup this expenditure by adding the amount to the balance due on the note. Therefore, we conclude the total amount due on the note on the date of sale of the property was $78,451.01.

We hold that the difference between the fair market value of the property ($79,-600.00) and the total amount due on the note on the date of sale ($78,451.01) produces wrongful foreclosure damages of $1,148.99. *See GXG*, 977 S.W.2d at 423 (if a trial court errs in computing damages, the appellate court may reform the amount of damages); *Travelers Ins. Co. v. Martin*, 28 S.W.3d 42, 47 (Tex.App.-Texarkana 2000, no pet.) ("A reviewing court has the power to modify the amount of recovery and reform a damages award."); *see also Rhodes v. Dallas Joint Stock Land Bank*, 91 S.W.2d 962, 964 (Tex.Civ.App.-Dallas 1936, no writ) (holding error in calculation of amount due on accelerated note secured by deed of trust does not require reversal of cause; appellate court may correct judgment). We sustain sub-issue (e) of appellant's thirteenth issue and reform the trial court's judgment to reflect actual damages for wrongful foreclosure to be $1,148.99.

## D. JUDGMENT ON THE NOTE

In its first issue, UMLIC argues that, as a matter of law, it was entitled to judgment on the note, breach of the guaranty, and the amount due.

---

**4.** Interest accrued on the unpaid balance from November 19, 1998 until March 6, 2002, the date the property was sold to LSS Investments, Inc.

To collect on a promissory note as a matter of law, a holder or payee must establish that (1) there is a note, (2) he is the legal owner and holder of the note, (3) the defendant is the maker of the note, and (4) a certain balance is due and owing on the note. *Blankenship v. Robins,* 899 S.W.2d 236, 238 (Tex.App.-Houston [14th Dist.] 1994, no writ). Once a holder establishes these facts, he is entitled to recover only if the maker of the note fails to establish a defense. *Id.* (citing *Groschke v. Gabriel,* 824 S.W.2d 607, 610 (Tex.App.-Houston [1st Dist.] 1991, writ denied)).

As we stated above, the trial court received into evidence, without objection, the promissory note, the deed of trust, and the guaranty agreement. At trial, the parties stipulated that UMLIC is the holder and owner of the note, and that as of November 19, 1998, the principal balance remaining on the note was $49,602.24. Appellees never disputed their signatures on the note, deed of trust, or guaranty agreement. UMLIC argues that appellees failed to plead or prove a viable affirmative defense.

In response, appellees assert that they adequately pleaded and proved that UMLIC wrongfully foreclosed on the property. Wrongful foreclosure is an appropriate affirmative defense to a suit to collect on a note. *Cf. Shearer v. Allied Live Oak Bank,* 758 S.W.2d 940, 943–44 (Tex.App.-Corpus Christi 1988, writ denied) (noting that the affirmative defense of wrongful foreclosure must be raised at trial). We have already determined that wrongful foreclosure was adequately pleaded and supported by sufficient evidence. Further, in determining actual damages for wrongful foreclosure, the remaining balance due on the indebtedness was deducted from the fair market value of the property. Appellant's first issue is overruled.

## E. CAUSES OF ACTION IN TORT

In its twenty-first issue, UMLIC contends a mortgagee owes no independent duty of good faith and fair dealing to a mortgagor. In its seventeenth issue, UMLIC complains the trial court erred in submitting an ordinary negligence claim to the jury.

A tort obligation is a general obligation imposed by law "apart from and independent of promises made and … the manifested intentions of the parties, to avoid injury to others." *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 496 (Tex.1991) (quoting W. KEETON, D. DOBBS, R. KEETON & D. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 655 (5th Ed.1984)). To establish a negligence cause of action, a party must show (1) the existence of a legal duty, (2) breach of that duty, and (3) damages proximately resulting from the breach. *San Benito Bank & Trust Co. v. Landair Travels,* 31 S.W.3d 312, 317 (Tex.App.-Corpus Christi 2000, no pet.) (citing *Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex.1998)). In order to establish liability, a complaining party must prove the existence and violation of a duty, *San Benito Bank & Trust,* 31 S.W.3d at 317 (citing *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987)), a legally enforceable obligation to conform to a particular standard of conduct. *Valley Shamrock v. Vasquez,* 995 S.W.2d 302, 306 (Tex. App.-Corpus Christi 1999, no pet.). The existence of a duty is a threshold question of law for the court, to be decided from the particular facts surrounding the case in question. *Valley Shamrock,* 995 S.W.2d at 302 (citing *Mitchell v. Mo.-Kan.-Tex.R.R.,* 786 S.W.2d 659, 662 (Tex.1990)).

### 1. Duty of Good Faith and Fair Dealing

In its twenty-first issue, UMLIC contends a mortgagee owes no independent duty of good faith and fair dealing to a mortgagor. The Texas Supreme Court has declined to impose an implied duty of good faith and fair dealing in every contract, though it has recognized that such a duty may arise as a result of "a special relationship between the parties governed or created by a contract." *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983). Such "special relationships" have been found to arise where contractual relationships are marked by shared trust or an imbalance of bargaining power. *See FDIC v. Coleman*, 795 S.W.2d 706, 709–10 (Tex. 1990); *Arnold*, 725 S.W.2d at 167. When a special relationship between parties gives rise to independent duties, such as a duty of good faith and fair dealing, those duties are enforceable as torts. *See Coleman*, 795 S.W.2d at 709–10; *DeLanney*, 809 S.W.2d at 494 n. 1. However, absent a "special relationship," any duty to act in good faith is contractual in nature and its breach does not amount to an independent tort. *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex.App.-Dallas 1993, writ dism'd w.o.j.) (citing *Cent. Sav. & Loan Ass'n v. Stemmons N.W. Bank, N.A.*, 848 S.W.2d 232, 239 (Tex.App.-Dallas 1992, no writ)); *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 481 (Tex.App.-Corpus Christi 1989, writ denied).

Texas courts have found no special relationship between a mortgagor and a mortgagee, or between a creditor and a guarantor, that would impose an independent common law duty of good faith and fair dealing. *See Coleman*, 795 S.W.2d at 709 ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith. Similarly, the relationship between a creditor and a guarantor does not ordinarily import a duty of good faith."); *White v. Mellon Mortgage Co.*, 995 S.W.2d 795, 800 (Tex.App.-Tyler 1999, no pet.) ("[T]he relationship between a mortgagor and a mortgagee does not give rise to a duty of good faith."); *Long v. NCNB–Tex. Nat'l Bank*, 882 S.W.2d 861, 869 (Tex. App.-Corpus Christi 1994, no writ) ("secured parties do not owe guarantors a duty of good faith"); *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 902 (Tex.App.-Corpus Christi 1989), *rev'd on other grounds*, 811 S.W.2d 931 (Tex.1991) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962)) ("We know of no cases in this state which impose a duty of good faith and fair dealing on lenders in general to their borrowers: a debtor-creditor relationship does not give rise to such a duty...."); *Lovell v. Western Nat'l Life Ins.*, 754 S.W.2d 298, 303 (Tex.App.-Amarillo 1988, writ denied) ("[T]here exists no special relationship between the [borrowers and note-holder] and, therefore, no duty of good faith and fair dealing is implied."). Accordingly, we conclude there was no duty of good faith and fair dealing imposed between UMLIC and the appellees. Appellant's twenty-first issue is sustained.

### 2. General Negligence

In its seventeenth issue, UMLIC complains the trial court erred in submitting an ordinary negligence claim to the jury. Appellees assert that every contract is accompanied by a common law duty to perform with "care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." *See Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947). While it is true that a contractual relation-

ship between parties may create duties under both contract and tort law, *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986), the supreme court has clarified the broad language used in *Scharrenbeck* and explained that even where a party is negligent, depending on the circumstances, the cause of action may sound only in tort or only in contract. *See DeLanney*, 809 S.W.2d at 494–95. Therefore, "[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both." *Jim Walter Homes*, 711 S.W.2d at 618.

▮ The only duty that courts have imposed between a creditor and a debtor or guarantor is that the "secured party owes both the note maker and the guarantor the duty to discharge its respective contractual obligations properly." *Long*, 882 S.W.2d at 869; *Resolution Trust Corp. v. Westridge Ct. Joint Venture*, 815 S.W.2d 327, 332 (Tex.App.-Houston [1st Dist.] 1991, writ denied); *Georgetown Assoc., Ltd. v. Home Fed. Sav. & Loan Ass'n*, 795 S.W.2d 252, 256 (Tex.App.-Houston [14th Dist.] 1990, writ dism'd w.o.j.). A secured party breaches this duty by negligently failing to exercise ordinary care in disposing of the security. *Long*, 882 S.W.2d at 869 (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 223 (Tex. 1992)). However, in order for appellees to recover under a theory of general negligence, we must determine whether breach of this duty constitutes an independent tort, such that it could sustain a cause of action apart from the existence of the contract.

▮ Though the basic principles of contract and tort causes of action are well settled, it is often difficult to distinguish the type of action brought. *Jim Walter Homes*, 711 S.W.2d at 617; *Int'l Printing Pressmen & Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 735 (1946).

In order to determine whether a cause of action arises in contract or tort, we must look beyond the form of the pleading and consider "both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs.*, 960 S.W.2d 41, 45 (Tex.1998) (citing *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 12 (Tex.1996)).

### a. Source of the Duty

▮ The supreme court has advised that "actions in contract and actions in tort are to be distinguished in that an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law." *Smith*, 198 S.W.2d at 735 (citing 1 C.J.S. 1098). An action arises from a contract "if the action is not maintainable without pleading and proving the contract, [or] where the gist of the action is the breach of the contract, either by malfeasance or nonfeasance." *Id.* (citing 1 Am. Jur. 442). If a party must rely on the duties created in the contract, or if the negligence claim alleges the breach of the very duties encompassed in a contract, the action is in substance an action on the contract. *See DeLanney*, 809 S.W.2d at 496 (Gonzalez, J., concurring) (citing *Johnson, Inc. v. Cont'l Constructors, Inc.*, 630 S.W.2d 365, 368 (Tex.App.-Austin 1982, writ ref'd n.r.e.)); *CBI NA–CON v. UOP Inc.*, 961 S.W.2d 336, 340 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). However, a claim sounds in tort only if a party's conduct "would give rise to liability independent of the fact that a contract exists between the parties." *DeLanney*, 809 S.W.2d at 495.

▮ When a mortgagee exercises its option to sell property on which it has

been granted a lien, the provisions it must follow governing the foreclosure and sale are contained in the deed of trust. *See Bonilla,* 918 S.W.2d at 21. These provisions must be strictly followed, and whether the sale has been conducted properly is judged against the requirements contained in the deed. *See id.; Univ. Sav. Assoc.,* 644 S.W.2d at 706. We consider this reliance on the specific obligations contained in the contract. Because it did not follow the dictates of the deed of trust, UMLIC failed to conduct the foreclosure sale properly and, thus, violated the contract executed between the parties.

We note that, had there been no contract between the parties, UMLIC's seizure of possession and subsequent sale of the property to a third party would have supported a cause of action in tort for the resulting damages. However, because T & M gave UMLIC a contractual right to take these actions and executed a contract spelling out the respective rights of the parties in such a circumstance, the contract governs any disputes between the parties relating to the disposition of the property. *See DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 105 (Tex.1999) ("A person who enters a neighbor's property and cuts down trees with no contractual right to do so can be held liable in tort. But when, as here, a contract spells out the parties' respective rights about whether trees may be cut, the contract and not common-law negligence governs any dispute about whether trees could be cut or how trees were cut.")

Accordingly, we conclude that the source of UMLIC's duty to conduct the foreclosure sale properly was the deed of trust.

### b. Nature of Remedy Sought

We next look to the nature of the injury and remedy sought to assist in determining "whether the action sounds in contract alone or also in tort. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Adolph Coors Co.,* 780 S.W.2d at 485; *see DeLanney,* 809 S.W.2d at 495; *Jim Walter Homes,* 711 S.W.2d at 618; *CBI NA–CON,* 961 S.W.2d at 340.

The jury found damages in favor of appellees for loss of business reputation. "[B]usiness reputation is a major factor which usually is included in loss of value or diminution of a business." *Nelson v. Data Terminal Sys., Inc.,* 762 S.W.2d 744, 748 (Tex.App.-San Antonio 1988, writ denied). Claims that assert "only economic injury to the subject matter of the contract itself [include] ... damages for ... loss of good will and lost profits." *CBI NA–CON,* 961 S.W.2d at 340; *see Thomson v. Espey Huston & Assocs.,* 899 S.W.2d 415, 421 (Tex.App.-Austin 1995, no writ) (" 'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ....' ") (quoting *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.,* 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346, 348 (1990)). Therefore, damages for loss of business reputation appear to be purely economic.

■ In its twenty-third issue, UMLIC asserts that these damages are not proper in a breach of contract action. We agree.

"Loss of business reputation is not an element of damages recoverable for breach of contract." *Rubalcaba v. Pac./Atl. Crop Exch.,* 952 S.W.2d 552, 559 (Tex.App.-El Paso 1997, no pet.) (citing *Nelson,* 762 S.W.2d at 748); *Sterling Projects Inc. v. Fields,* 530 S.W.2d 602, 605 (Tex.Civ.App.-Waco 1975, no writ) (citing *Streetman v. Lasater,* 185 S.W. 930 (Tex.Civ.App.-El Paso 1916, no writ)). Thus, the remedy

sought presents an incongruity. Though pure economic damages generally indicate an action on a contract, under these circumstances they may not be awarded.

### c. Conclusion

Though the discordant nature of the remedy sought does not help to clarify the type of cause of action, the source of the duty is firmly grounded in the contract. Therefore, after weighing both factors, we conclude that the action brought by appellees was in substance an action on the contract and does not constitute an independent tort. Appellant's seventeenth issue is sustained.

Further, because loss of business reputation damages are not recoverable in a contract action, appellant's twenty-third issue is sustained.

## F. BREACH OF CONTRACT

In its twenty-second issue, UMLIC argues that the evidence is legally and factually insufficient to support a judgment based on breach of contract because appellees never pointed to a specific term in the contract that was breached.

■ In order to recover for a breach of contract, appellees must show (1) a valid contract existed between the parties, (2) appellees performed or tendered performance, (3) UMLIC breached the contract, and (4) appellees suffered damages resulting from that breach. *Ford v. City State Bank of Palacios,* 44 S.W.3d 121, 137 (Tex. App.-Corpus Christi 2001, no pet.). UMLIC challenges the sufficiency of the evidence only regarding whether appellees can identify a specific element of the contract as having been breached. We, therefore, limit our review to this element. *See* TEX. R. APP. P. 47.1.

■ The deed of trust was received into evidence without objection and states that in the event of any foreclosure, the "Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended." These terms are unambiguous and constitute legally and factually sufficient evidence of a specific term of the deed of trust which was breached. Appellant's twenty-second issue is overruled.

## G. MENTAL ANGUISH

■ In its eighteenth issue, UMLIC contends a lender does not owe a common law duty to a guarantor not to inflict mental anguish.

■ "Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish." *City of Tyler v. Likes,* 962 S.W.2d 489, 494 (Tex.1997) (citing *Boyles v. Kerr,* 855 S.W.2d 593, 597 (Tex.1993)). A claimant may recover mental anguish damages only in connection with the breach of some other legal duty. *Id.* Further, because mental anguish can be difficult to predict and its existence inherently difficult to verify, Texas courts do not recognize it as a compensable element of damages in many cases where it may occur. *Id.* at 494–95. "For many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish." *Id.* In the limited circumstances where a duty of good faith is imposed by a special relationship, mental anguish is often compensable as the foreseeable result of a breach of that duty. *Id.* However, most relationships, "whether legal or personal, create no duty to avoid causing mental anguish." *Id.*

The only duty imposed between UMLIC and the Lozanos as guarantors was a duty for UMLIC to exercise ordinary care and conduct the foreclosure sale disposing of the security properly. *See Long,* 882

S.W.2d at 869 (citing *T.O. Stanley Boot Co.*, 847 S.W.2d at 223); *Resolution Trust Corp.*, 815 S.W.2d at 332. This duty arises from the contractual relationship between the parties and does not constitute an independent tort action. *See* discussion *supra* Part E.2. "[M]ental anguish damages are not recoverable in a cause of action for breach of contract nor in a tort action arising from a contractual breach." *Hallmark v. Hand*, 885 S.W.2d 471, 481 (Tex. App.-El Paso 1994, writ denied); *Rubalcaba*, 952 S.W.2d at 558. Accordingly, we conclude it was error to include mental anguish damages in the judgment. Appellant's eighteenth issue is sustained.

## H. EXEMPLARY DAMAGES

 The jury found that the harm suffered by T & M resulted from malice and awarded $2.5 million in exemplary damages. In its twenty-seventh issue, UMLIC asserts the evidence is legally and factually insufficient to support the jury's award of exemplary damages.

 Exemplary damages are allowed where a claimant proves by clear and convincing evidence that the harm suffered resulted from fraud, malice, or gross negligence. *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 373 (Tex.2004) (citing TEX. CIV. PRAC. & REM. CODE § 41.003(a)). A suit for breach of contract, or for breach of an implied covenant to a contract, will not support an award of exemplary damages, even if the contract was maliciously breached. *Manges v. Guerra*, 673 S.W.2d 180, 184 (Tex.1984) (citing *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981)); *A.L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 168 S.W.2d 629, 631 (1943); *Castle Tex. Prod. L.P. v. Long Trusts*, 134 S.W.3d 267, 277 (Tex.App.-Tyler 2003, pet. denied).

Because we have already determined that appellees failed to sufficiently plead a cause of action for fraud, and there is no independent cause of action in tort in the case before us, even with a finding of malice, appellees cannot recover exemplary damages based solely on wrongful foreclosure. *See Int'l Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex.1987) (reversing award of exemplary damages in wrongful foreclosure suit); *Boswell v. Hughes*, 491 S.W.2d 762, 764 (Tex.Civ.App.-El Paso 1973, write ref'd n.r.e.) (finding trial court erred in awarding exemplary damages in wrongful foreclosure action); *Covington v. Burke*, 413 S.W.2d 158, 160 (Tex.Civ.App.-Eastland 1967, writ ref'd n.r.e.) (finding no merit in a claim for exemplary damages on a finding of wrongful foreclosure). Appellant's twenty-seventh issue is sustained.

## I. IMPROPER JURY ARGUMENT

In its twenty-eighth issue, UMLIC contends that appellees' counsel presented improper and inflammatory jury argument, the cumulative effects of which were calculated to and probably did cause rendition of an improper judgment.

 To obtain reversal of a judgment on the basis of improper jury argument, a complainant must prove (1) an error; (2) that was not invited or provoked; (3) that was preserved at trial by a proper objection, motion to instruct, or motion for mistrial; (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial court; and (5) that the argument by its nature, extent, and degree constituted reversibly harmful error. *Krishnan v. Ramirez*, 42 S.W.3d 205, 221 (Tex.App.-Corpus Christi 2001, pet. denied) (citing *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979)). Reversal is proper only upon a showing that "the probability that the improper argument caused harm is greater than the probability that the verdict was grounded

on the proper proceedings and evidence." *Reese*, 584 S.W.2d at 840.

■ Improper jury arguments can be either curable or incurable. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex.1968). A jury argument is "curable" when the harmful effect of the argument can be eliminated by an instruction to the jury to disregard what they have just heard. *Id.* However, when an argument is so inflammatory that its harmfulness could not be eliminated by an instruction to the jury to disregard it, the prejudicial nature of the argument is so acute that it is "incurable." *Id.* If an argument is considered to be curable, counsel must make a prompt objection to it and request an instruction, or the error is waived. *Id.* When an argument is incurable, a failure to object does not result in a waiver, under the reasoning that "counsel making the argument is the offender so the law will not require opposing counsel to take a chance on prejudicing his cause with the jury by making the objection." *Id.* (citing *Smerke v. Office Equip. Co.*, 138 Tex. 236, 158 S.W.2d 302 (Tex.Comm.App.1941)).

■ Improper jury argument results in incurable harm only in rare instances, such as an appeal to racial prejudice, calling someone a liar or a fraud, or by making an unsupported charge of perjury. *Dover Corp. v. Perez*, 587 S.W.2d 761, 767 (Tex.App.-Corpus Christi 1979, writ ref'd n.r.e.). Whether an argument is incurable depends on "the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict." *Tex. Employers' Ins. Ass'n v. Haywood*, 153 Tex. 242, 266 S.W.2d 856, 858 (1954).

■ UMLIC alleges the following six instances of improper jury argument by appellees' counsel: (1) counsel mentioned a settlement letter sent by UMLIC to T & M, (2) counsel told the jury that the Lozanos had no notice of the tax judgment in violation of the motion in limine and without evidence to support the statement, (3) counsel called UMLIC a "vulture" coming to Texas to "pick on a carcass," (4) counsel claimed he was mislead by a letter UMLIC sent to appellees when there was no evidence to support the claim and both Tomas and Perla Lozano had testified that they were not mislead by the letter, (5) counsel told the jury that UMLIC had done "the same thing" to other businesses without evidence to support the claim, and (6) counsel told the jury not to let a corporation from out of state treat businesses in "the Valley" the way UMLIC treated appellees. At no point during jury argument did UMLIC's counsel object or ask for an instruction to the jury regarding the argument. UMLIC argues that these remarks engendered regional bias and discussed evidence that was not eventually offered at trial. We conclude, however, that these remarks do not rise to the level of incurable arguments. Therefore, UMLIC's failure to object did not preserve error, and the issue is waived. Appellant's twenty-eighth issue is overruled.

In light of our disposition of these issues, it is unnecessary to address UMLIC's remaining issues. TEX. R. APP. P. 47.1.

We REVERSE that part of the trial court's judgment awarding (1) exemplary damages to T & M in the amount of $2,500,000, (2) actual damages to Tomas Lozano in the amount of $8,250, and (3) actual damages to Perla Lozano in the amount of $9,880. We RENDER judg-

ment that Tomas Lozano and Perla Lozano take nothing by their counterclaim.

We REFORM the remaining part of the trial court's judgment to show that T & M have judgment against UMLIC for wrongful foreclosure in the amount of $1,148.99, together with post-judgment interest at the rate of ten percent per annum from August 15, 2002 until paid. As reformed, the trial court's judgment is AFFIRMED.