NO.
12-05-00250-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

LARRY KNIGHT AND SHARON KNIGHT,         §                      APPEAL
FROM THE SEVENTH

APPELLANTS

 

V.        §                      JUDICIAL DISTRICT COURT OF

EAST TEXAS MEDICAL
CENTER

AND JESSE MOWERY,

APPELLEES §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Larry Knight
and Sharon Knight appeal the trial court’s judgment.  In three issues, the Knights contend that
jury misconduct occurred and that counsel for Appellees, East Texas Medical
Center (“ETMC”) and Jesse Mowery, engaged in improper and incurable jury argument.  We affirm.

 

Background

            On March 14,
2002, Larry Knight was admitted to ETMC. 
He was diagnosed with a broken ankle and scheduled for surgery.  Dr. Eldon Steele was the anesthesiologist
caring for Mr. Knight.  Following his
surgery, Mr. Knight experienced respiratory complications.  Steele did not immediately address Mr. Knight’s
condition and, as a result,  Mr. Knight
sustained severe injuries.








            The Knights
sued Steele, East Texas Anesthesiology Associates, P.A., ETMC, and Mowery, an
ETMC nurse.  Prior to trial, the Knights
dismissed their claims against Steele and East Texas Anesthesiology Associates
pursuant to a settlement agreement.  The
matter proceeded to trial on the Knights’ claims against ETMC and Mowery.  Ultimately, the jury found ETMC negligent,
attributing five percent of responsibility for the occurrence to ETMC and the
remaining ninety-five percent of responsibility to Steele.  The jury declined to make any finding of
liability with regard to Mowery.  On
April 7, 2005, the trial court signed a final judgment in favor of the Knights
against ETMC.

            The Knights
filed a motion for new trial on April 11, 2005. 
In their motion, the Knights argued that they were denied a fair trial
because (1) a juror named Sherry Jenkins held a bias that she did not disclose
to counsel during voir dire examination, (2) certain jurors considered
insurance and other issues that were outside the scope of evidence introduced
at trial, and (3) trial counsel for ETMC and Mowery made incurable,
impermissible attacks on the Knights’ counsel’s credibility.  On June 15, 2005, the trial court held a
hearing on the Knights’ motion. 
Subsequently, the trial court denied the Knights’ motion, and this
appeal followed.

 

Jury
Misconduct

            In their
first issue, the Knights argue that the trial court erred in declining to find
that Jenkins’s failure to disclose her alleged bias amounted to jury
misconduct.  In their second issue, the
Knights contend that the trial court erred in declining to find that certain
jurors’ alleged consideration of matters outside the scope of the evidence
pertaining to insurance amounted to jury misconduct.

            We review a
trial court’s decision on a motion for new trial under an abuse of discretion
standard.  See Cliff v.
Huggins, 724 S.W.2d 778, 778 (Tex. 1987).  The trial court’s determination of the facts
is binding on the appellate courts and will only be reversed where a “clear
abuse of discretion is shown.”  Pharo
v. Chambers County, Tex., 922 S.W.2d 945, 948 (Tex. 1996) (citing
State v. Wair, 163 Tex. 69, 351 S.W.2d 878, 878 (1961)).  The determination of whether jury misconduct
occurred is a question of fact.  Id.  If there is conflicting evidence on jury
misconduct, the trial court’s determination must be upheld on appeal.  Id.  Unless the trial court made a finding to the
contrary, we assume that the trial court made all findings supporting its
decision to deny the motion for new trial. 
See Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362,
372 (Tex. 2000).








            To be
entitled to a new trial based on jury misconduct, the movant must establish
that (1) the misconduct occurred, (2) the misconduct was material, and (3) the
misconduct probably caused injury.  Id.  The trial court hears evidence from the jury
or others in open court and will grant a new trial if there is either a
material, erroneous, or incorrect answer on voir dire examination or a material
act of misconduct that probably resulted in injury to the complaining
party.  See Tex. R. Civ. P. 327(a); Golden Eagle Archery, Inc.,
24 S.W.3d at 372.  However, a juror may
not testify as to events occurring during the course of the jury’s
deliberations.  See Tex. R. Civ. P. 327(b); Tex. R. Evid. 606(b).  “Deliberations” means formal jury
deliberations, that is “when the jury weighs the evidence to arrive at a
verdict.”  See Golden Eagle
Archery, Inc., 24 S.W.3d at 371. 
It does not include informal discussions during a trial break before the
close of evidence.  Id.  However, where  there is an indication that jurors have been
discussing the case while on breaks during deliberations, such a situation is
considered the same as formal deliberations. 
See, e.g., Chavarria v. Valley Transit Co., Inc.,
75 S.W.3d 107, 111 (Tex. App.–San Antonio 2002, no pet.).

Untruthful Answers During Voir Dire Examination

            We first
address the Knights’ argument that Jenkins failed to disclose a bias she
held.  At the time of trial, Jenkins was
a student in the emergency medical services program at Tyler Junior
College.  As part of her training,
Jenkins participated in two “ride outs” with ETMC’s ambulance service.  The Knights argue that her participation in
these “ride outs”  indicates Jenkins’s
bias toward ETMC.  The Knights further
assert that Jenkins was asked to disclose any potential bias during voir dire
and that her failure to so disclose constitutes jury misconduct.

            During the
hearing on their motion for new trial (the “hearing”), the Knights questioned
Jenkins about the truthfulness of the answers she provided during voir
dire.  During voir dire,[1]
the Knights asked the panel if anyone knew Bob Evans, the head of ETMC.  At the hearing, Jenkins testified that she
did not raise her hand indicating that she knew Bob Evans because she did not
know him.  

            At voir
dire, the Knights  further queried
whether any member of the panel ever had a good experience with ETMC.  At the hearing, Jenkins testified that she
did not believe that she raised her hand in response to that question, but when
questioned further, testified that she “guessed” she had a good experience on
the two ride outs.  Jenkins explained
that she did not disclose the two ride outs because she did not realize that
the attorneys were asking about them and that she did not believe she had any
affiliation or connection to ETMC. 
Jenkins further testified that she disclosed that she was in school and
studying emergency medical services. 
Jenkins stated that she was never a patient at ETMC.  Therefore, she never had a good experience
with ETMC from that perspective.  

            During voir
dire, the Knights questioned the members of the panel as to whether any of them
had any negative experiences with ETMC that would cause them to be unfair.  At the hearing, Jenkins testified that she
did not raise her hand in response to this question because she had no such
negative experiences.  

            The Knights
also questioned venire members as to whether any of them had close friends or
family members who were physicians. 
Although the Knights assert that Jenkins failed to raise her hand in
response to this question, there is no evidence in the record indicating that
Jenkins’s failure to respond amounted to an untruthful omission.  

            At the
hearing, the Knights asked Jenkins if she believed that she could be fair in
this case.  She answered, “Yes.”  The Knights further asked Jenkins if she
remembered the question from voir dire concerning whether any panel member knew
of something not asked that would “make it where [that person] could not be
fair.”  Jenkins stated that she
remembered the question, but that she did not disclose the two ride outs
because she did not believe that they would prevent her from being fair.

            The Knights
also contend that Jenkins should have stated in the trial court’s juror
questionnaire she completed that she was an EMT, that she had trained with
ETMC, and that she had more education than a high school diploma.  The questionnaire contained a space in which
to indicate occupation, which Jenkins left blank.  The questionnaire further contained a space
in which to indicate the highest level of education completed, and Jenkins
checked “high school diploma.”  During
voir dire, Jenkins was asked about her employment and explained that she was
currently unemployed, but that she had been a secretary and had just finished
EMS training.  Later during voir dire
examination, Jenkins stated that she had a Tyler Junior College class starting
in January.  At the time in question,
Jenkins had finished high school, but had not finished her Tyler Junior College
classes.

            Following
the hearing, the trial court found that (1) the Knights did not establish that
Jenkins failed to disclose any bias or prejudice during voir dire questioning
and (2) Jenkins answered each question in a truthful manner and did not
materially change her answers from the time of voir dire to the time of the
hearing on the Knight’s motion for new trial. 
Our review of the record indicates that there is evidentiary support for
the trial court’s findings.  Therefore,
we hold that the Knights failed to establish juror misconduct on Jenkins’s part
based on untruthful answers during voir dire. 
The Knights’ first issue is overruled.

Consideration of Issues Outside of the Evidence Introduced at
Trial

            We next
consider the Knights’ argument that the jury considered matters pertaining to insurance
and other matters not part of the evidence introduced at trial.  During the hearing on their motion for new
trial, the Knights questioned three jurors regarding their discussion of
insurance and medical issues, neither of which was introduced at trial.  Among the jurors examined was Jenkins, who
testified that no discussions of insurance occurred before the jury began
deliberations.  Jenkins further testified
that she had  knowledge pertaining to
some of the medical equipment discussed at trial, but did not share her
knowledge with any other juror prior to the jury’s deliberations. 

            The Knights
next examined Juror Tahmeane Elrod. 
Elrod’s testimony was inconsistent. 
First, Elrod testified that insurance was discussed outside of the jury’s
deliberations and that such discussions had a material effect on her
verdict.  Elrod later testified that the
discussion of insurance did not have a material effect on her verdict, but that
it may have had an effect on other jurors. 
Later still, Elrod testified that she could not recall any time other
than in deliberations when insurance was discussed.  Elrod further testified that insurance was
discussed at some point outside of deliberations and that the discussion of insurance
affected the verdict.  Elrod stated that
Jenkins talked about her medical experience outside of deliberations.  However, she did not testify concerning the
substance of such conversations or the effect, if any, that such discussions
had on the jury’s verdict.  

            The Knights
next questioned Juror Laura Blackburn. 
Blackburn testified that Jenkins spoke generally concerning some of the
medical devices being discussed at trial. 
Blackburn stated that Jenkins did not go into detail, but rather said
that she knew what the devices were. 
When asked if Jenkins’s statements had an effect on her feelings toward
the evidence, Blackburn testified that she really did not care about Jenkins’s
feelings.  Blackburn further testified
that insurance was not discussed prior to the judge’s reading the charge to the
jury.[2]        

            Ultimately,
the trial court found that the evidence failed to establish that, if any
misconduct occurred, (1) it had any material effect on the jury verdict and (2)
it resulted in injury to the Knights. 
Since the trial court did not make a specific finding that jury
misconduct occurred prior to deliberations, we assume that the trial court made
an implied finding in that regard.  See
Golden Eagle Archery, Inc., 24 S.W.3d at 372.  While there was conflicting testimony, there
was ample evidence of record to support the trial court’s findings, both
express and implied.  We hold that the
evidence presented in the case at hand about discussions prior to formal
deliberations does not establish jury misconduct.  See Golden
Eagle Archery, Inc., 24 S.W.3d at 373-74.[3]  The Knights’ second issue is overruled.

 

Improper
Jury Argument

            In their
third issue, the Knights argue that the trial court erred in overruling their
motion for new trial because trial counsel for ETMC and Mowery made
impermissible and incurable attacks upon the credibility of the Knights’ trial
counsel.  To obtain reversal of a
judgment on the basis of improper jury argument, a complainant must prove (1)
an error; (2) that was not invited or provoked; (3) that was preserved at trial
by a proper objection, motion to instruct, or motion for mistrial; (4) that was
not curable by an instruction, a prompt withdrawal of the statement, or a
reprimand by the trial court; and that (5) the argument by its nature, extent,
and degree constituted reversibly harmful error.  See UMLIC VP LLC v. T & M Sales and
Environmental Sys., Inc., 176 S.W.3d 595, 616 (Tex. App.–Corpus Christi
2005, pet. denied); see also Standard Fire Ins. Co. v. Reese, 584
S.W.2d 835, 839 (Tex. 1979).  Reversal is
proper only upon a showing that “the probability that the improper argument
caused harm is greater than the probability that the verdict was grounded on
the proper proceedings and evidence.”  Reese,
584 S.W.2d at 840.

            Improper
jury arguments can be either curable or incurable. Otis Elevator Co. v.
Wood, 436 S.W.2d 324, 333 (Tex.1968); UMLIC VP LLC, 176
S.W.3d at 617.  A jury argument is “curable”
when the harmful effect of the argument can be eliminated by an instruction to
the jury to disregard what they have just heard. Id.  However, when an argument is so inflammatory
that its harmfulness could not be eliminated by an instruction to the jury to
disregard it, the prejudicial nature of the argument is so acute that it is “incurable.”  Id.  If an argument is considered to be curable,
counsel must make a prompt objection to it and request an instruction,
or the error is waived. Id. 
When an argument is incurable, a failure to object does not result in a
waiver, under the reasoning that “counsel making the argument is the offender
so the law will not require opposing counsel to take a chance on prejudicing
his cause with the jury by making the objection.”  Id.

            Improper
jury argument results in incurable harm only in rare instances, such as an
appeal to racial prejudice, the use of epithets of “liar,” fraud” “faker,”  “cheat,” and “impostor,” or by making an
unsupported charge of perjury.  UMLIC
VP LLC, 176 S.W.3d at 617. 
Whether an argument is incurable depends on “the degree of prejudice
flowing from the argument—whether the argument, considered in its proper
setting, was reasonably calculated to cause such prejudice to the opposing
litigant that a withdrawal by counsel or an instruction by the court, or both,
could not eliminate the probability that it resulted in an improper verdict.”  Id.

            On appeal,
we must evaluate the argument in light of the entire case, from voir dire to
closing arguments.  See Luna v.
North Star Dodge Sales, Inc., 667 S.W.2d 115, 120 (Tex. 1984).  The test is whether a juror of ordinary
intelligence would have been persuaded by the improper argument to agree to a
verdict contrary to that to which the juror would have otherwise agreed.  See Tex. Employers Ins. Ass’n v.
Puckett, 822 S.W.2d 133, 136 (Tex. App.–Houston [1st Dist.] 1991, writ
denied).  The burden to prove that
improper argument was incurable rests on the claimant.  See Gen’l Motors Corp. v. Grizzle,
642 S.W.2d 837, 845 (Tex. App.–Waco 1982, writ dism’d).

            In the case
at hand, the Knights direct us to the following portion of opposing counsel’s
jury argument:[4]

 

...[The
Knights’ expert witness] was wrong about one thing.  She was wrong about one thing.  And that was that if she said the standard of
care was met to a plaintiff’s lawyer looking for someone to say that it was
not, she said the case would just stop.  

 

It wouldn’t, because if that happened,
plaintiffs would just go to somebody else. 
Go ask another one.  Go pay
another one.  See how long it takes, but,
eventually, you might get one.

 

            ....

[Counsel for the Knights] put up here a
while ago one page after another that totals in excess of $20 million.  There is no evidence to support anything like
that.  He’s asking you for in excess of
$20 million before he even gets to exemplary damages that he thinks he ought to
be awarded.  

 

There is no evidence.  You promised me you would make them prove
it.  Where are the numbers?  Where are they?  They’re made up, made up by [the Knights’
counsel].[5]

 

                ....

 

Credibility has been the biggest thing
in this case, and I want to talk to you a minute about credibility from the
attorneys for the plaintiffs.  They
started this case with something just minor. 


 

And y’all probably thought, “Well, what
an idiot [ETMC and Mowery’s counsel] is. 
Mr. Knight ate a macaroni salad and part of chicken sandwich provided to
him by ETMC.”  I pointed out to you, that’s
not their burden; it’s mine.  It doesn’t
mean anything.  So what?  Who cares where he got it?  

 

I pointed that out to you because the
stories kept getting more and more – [the Knights’ counsel], in opening
statement, said – to try to inflame you said, “Then they send him for an x-ray.”  They didn’t send him anywhere.  I told you that on opening statement.  He then gets his stories mixed up, and he
claimed the Bible.  He claimed the Bible.  That’s easy, isn’t it?  

 

You remember the story he asked the
fireman about the man in the Bible who had no shoes, and he felt bad until he
saw the man who had no feet?  Go home
tonight and find that sucker in the Bible. 
It ain’t there, but he claimed the Bible.

 

 

                ....

 

Today, ... [the Knights’ counsel]
argued that [ETMC and Mowery’s expert witness] had claimed he met Mr.
Knight.  Do y’all remember that little
cheap sideshow trick he pulled yesterday where he’s got a witness up here who
is not testifying about anything about –[6]

 

                ....

 

 

[The Knights’ counsel] asked [ETMC and
Mowery’s expert witness], “Have you ever seen Mr. Knight?”  

                

And [the expert witness] said, “Well, I
think I did.”  

                

                                [The
Knights’ counsel] said, “Well, can you point him out?  

                

                                [The
expert witness] said, “Well, I think it must be that gentleman right there.”  

 

He pointed out the gentleman who had
been seated with Mrs. Knight quite often and was seated with her
yesterday.  Now, then he told you today
that [the expert witness] said he had met him, he didn’t say that.  He just flat didn’t say it.  

                                

Now you can go on –  . . .  –
with credibility – I don’t remember which witness it was.

                ....

                                

                                Credibility
is simply not there.

 

 

In none of these instances did the Knights object and
seek a curative instruction.  Therefore,
they waived the error, if any.  See UMLIC
VP LLC, 176 S.W.3d at 617. 
However, we must still consider whether the record supports that the
aforementioned statements amounted to incurable jury argument. 

            In their
brief, the Knights argue that opposing counsel’s attack on their counsel’s
credibility “crippled [their counsel’s] integrity in the jurors’ eyes” and “amounted
to [opposing counsel] calling [their counsel] a liar in front of the jurors.”  We disagree that the aforementioned
statements rise to the level of an epithet of “liar.”  See Reese, 584 S.W.2d at 840.

            Having
reviewed the record in its entirety, we conclude that the statements of which
the Knights complain do not rise to the level of incurable jury argument.  Id.  None of the statements are so inflammatory as
to strike at the heart of the adversarial process, or appeal to deep seated and
universally execrated prejudices.  See
Boone v. Panola County, 880 S.W.2d 195, 198 (Tex. App.–Tyler 1994,
no writ).  Similarly, none of the
statements are so prejudicial as to cause a reasonable juror to agree to a
verdict contrary to one he would have agreed to absent the argument.  See Dunn v. Bank-Tec South,
134 S.W.3d 315, 323 (Tex. App.–Amarillo 2003, no pet.).  Furthermore, the Knights have made no
argument that the statements of opposing counsel were reasonably calculated to
cause such prejudice to their counsel that a withdrawal by counsel or an
instruction by the court, or both, could not eliminate the probability that it
resulted in an improper verdict.  As
such, they have failed to meet their burden. 
The Knights’ third issue is overruled.

Disposition

            Having
overruled the Knights’ first, second, and third issues, we affirm the
trial court’s judgment.

 

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

 

Opinion delivered February 9,
2007.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











     [1] At the hearing on
the Knights’ motion for new trial, the trial court took judicial notice of the
reporter’s record of the voir dire proceedings.





     [2] The Knights attached three affidavits to their motion
for new trial.  However, ETMC and Mowery
filed a motion to quash the affidavits, which the trial court granted.  On appeal, the Knights do not address the
trial court’s granting of the motion to quash these affidavits.





     [3] See also Tex. R. Civ. P. 327(b); Tex. R. Evid. 606(b).





     [4] The Knights make additional allegations in their brief
that the closing argument of opposing counsel contained other improper
statements.  However, the Knights have
not specifically identified any other alleged improper statements.  Rather, they have transcribed a portion of
the reporter’s record, to which they cite generally by volume number
alone.  That portion of the reporter’s
record contains each of the instances that the Knights previously designated as
incurable jury argument.  Nonetheless, we
have reviewed the entire record in reaching our conclusion as set forth below.





     [5] ETMC and Mowery’s
counsel clarified the argument as he continued by stating, “[The Knights’
counsel] is the one that decided how much impairment was worth.  [The Knights’ counsel] is the one that
decided how much pain and suffering is worth. 
That’s your job.  Your job is to
review the evidence and see, is there evidence, and what does it support?”  During his argument, the Knights’ counsel
admitted that the amounts in question were his suggestions to the jury.





     [6] The Knights objected to this statement, and the trial
court sustained their objection. 
However, the Knights did not request a curative instruction.