Opinion issued March 6, 2003











In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00366-CV




CINDY CARTER AND PIPER-MORGAN ASSOCIATES, INDIVIDUALLY
AND D/B/A AEI PROFESSIONAL TEMPORARIES, AND
ADMINISTRATIVE EXCHANGE, INC., INDIVIDUALLY AND D/B/A AEI
PROFESSIONAL TEMPORARIES, Appellants/Cross-Appellees

V.

STEVERSON & COMPANY, INC., INDIVIDUALLY AND/OR D/B/A
STEVERSON STAFFING SERVICES, Appellees/Cross-Appellants




On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 1999-54943




O P I N I O N

          This is an appeal from a jury verdict rendered for plaintiffs/appellees/cross-appellants, Steverson & Company, Inc., individually and/or d/b/a Steverson Staffing
Services (Steverson), on various breach of contract claims against Cindy Carter and
Piper-Morgan Associates, Individually and d/b/a AEI Professional Temporaries, and
Administrative Exchange, Inc., individually and d/b/a AEI Professional Temporaries,
defendants/appellants/cross-appellees (the Carter defendants). We are asked by the
Carter defendants to determine whether the evidence was legally and factually
sufficient to support the jury’s damage award. We are asked by Steverson to
determine whether the trial court erred in granting a remittitur reducing the damage
award. We affirm the final judgment. We reverse the order of remittitur and reform
the judgment to reflect the damages as awarded by the jury.
Factual & Procedural Background
          Steverson has been in the personnel placement business since 1979,
specializing in supplying temporary, temporary-to-permanent, and permanent
placements of administrative personnel with a variety of companies. Tommie
Steverson, the company’s founder, testified that the company has developed an
extensive, unique database crucial to its success in a crowded, competitive market. 
Carter was originally hired as a receptionist, then was promoted to the position of
staffing coordinator. As a staffing coordinator, she worked as a member of a team of
outside salespersons and other staffing coordinators. Her primary duties involved
searching the database for suitable candidates to match to available vacancies, closing
each deal, and maintaining an ongoing working relationship with the contact person
at each company to ensure its satisfaction with Steverson placements. Steverson
testified that it took a significant amount of time and effort to develop the contact
persons at each company with whom Steverson does business and that Carter was
introduced to these contact persons by virtue of her employment at Steverson. Carter
acknowledged the immense value of the database and of the contacts she made while
at Steverson. Carter signed an agreement containing covenants of non-disclosure,
non-contact, non-solicitation, and non-competition. In sum, Steverson expected
Carter—should she leave the firm—to refrain for one year from working with
applicants or companies she had become familiar with because of her work at
Steverson. Carter testified that she did not consider herself bound by that agreement,
but never disclosed that belief to Steverson.
          Carter contributed a great deal to the success of her team, and helped to earn
Steverson millions of dollars. However, because of an incident in which Carter
apparently blamed another team member for difficulties Steverson was experiencing
with one of its companies, Steverson fired Carter. About two weeks later, Carter was
hired by Piper-Morgan/AEI to make administrative placements. Before hiring Carter,
Piper-Morgan and AEI had never made administrative placements. Carter
immediately began placing employees she had met while at Steverson with companies
she had worked with while at Steverson. Steverson contacted the Carter defendants
and asked them to stop this practice. When they refused, Steverson filed suit.
          In 2000, Steverson sued the Carter defendants for injunctive and declaratory
relief, breach of contract, breach of fiduciary duty, violation of the Texas Personnel
Placement Act (TPPA),


 misappropriation of trade secrets, fraud, and tortious
interference with contract. The company sought actual and exemplary damages plus
attorney’s fees. The jury found for Steverson on its causes of action for breach of
contract, breach of fiduciary duty, violation of the TPPA, misappropriation of trade
secrets, and fraud. The jury awarded actual damages of $50,000 each against Piper-Morgan and AEI, and $10,000 against Carter. The actual damage amounts were then
trebled, in accordance with the penalty provision in the TPAA.


 Thus, the total
amount of damages assessed against Piper-Morgan and AEI came to $150,000 each,
and the amount of damages assessed against Carter totaled $30,000. In addition,
Steverson recovered attorney’s fees of $107,548.75 for trial with additional amounts
awarded in the event of appeals.
          Steverson moved for judgment on the verdict; the Carter defendants moved for
judgment notwithstanding the verdict (JNOV) or for new trial. In July 2001, the trial
court overruled the motions for JNOV and new trial and rendered judgment on the
verdict. The Carter defendants moved a second time for new trial and also moved for
remittitur. In October 2001, the trial court vacated its final judgment and signed an
order of remittitur. In January 2002, the trial court vacated the original remittitur
order; it subsequently rendered final judgment and signed a new remittitur order. The
Carter defendants challenge only the sufficiency of the evidence supporting the jury’s
damage award. Steverson cross-appeals the remittitur order. 
Sufficiency of the Evidence
          The jury found that Carter breached her fiduciary duty to Steverson and
violated the non-disclosure, non-solicitation, non-contact, and non-competition
provisions of her contract. The jury also found that all of the Carter defendants
knowingly disclosed confidential Steverson information and misappropriated
Steverson trade secrets. It further found that Carter committed fraud against
Steverson and that Piper-Morgan and AEI benefitted from her fraudulent conduct.
          By not challenging the jury’s findings on these issues, the Carter defendants
have conceded their wrongful conduct. In two issues on appeal, they challenge only
the legal and factual sufficiency of the evidence to support the jury’s answer to
question 11:
What sum of money, if any, if paid now in cash would fairly and
reasonably compensate Steverson for the damages it sustained, if any,
that were proximately caused by the conduct that you found in your
answers to Question Nos. 2, 6, 7(A), 8, 9, or 10?
 
Consider the following elements of damages, if any, and none
other:
 
a. the placement fees lost by Steverson for any temporary,
temp-to-hire and direct hire placement made by Carter
while employed at Piper-Morgan or AEI to a customer that
Carter learned about at Steverson
 
b. the placement fees lost by Steverson for any temporary,
temp-to-hire and direct hire placement made by Carter
while employed at Piper-Morgan or AEI of an applicant
that Carter learned about at Steverson

As noted earlier, the jury answered $10,000 for Carter and $50,000 each for Piper-Morgan and AEI.
          The Carter defendants argue that there is no reasonably certain evidence that
Steverson would have made the same personnel placements that were made by Piper-Morgan and AEI; they further contend that Steverson was required to provide such
evidence to recover lost profits. Steverson, in contrast, describes the damages not
merely as recovery of lost profits, but also as restitutionary recovery—disgorgement
by the Carter defendants of wrongfully acquired profits—designed to prevent the
Carter defendants from benefitting from their wrongful conduct as well as
compensating Steverson. 
          To recover lost profits damages, a plaintiff must show the amount of the loss
by competent evidence with reasonable certainty. Szczepanik v. First S. Trust Co.,
883 S.W.2d 648, 649 (Tex. 1994). The jury was instructed to consider only those
placement fees generated from the placement of former Steverson applicants with
former Steverson companies. Our reading of jury question 11 persuades us that it
invoked a lost profits measure of damages, and did not ask the jury to award
restitutionary damages. Thus, we must determine whether the evidence was sufficient
to support the lost profits measure of damages.
          Lost profit estimates must be based on objective facts, figures, or data from
which the lost profits may be ascertained. Helena Chem. Co. v. Wilkins, 47 S.W.3d
486, 505 (Tex. 2001). Lost profits damages may not be based on evidence that is
speculative, uncertain, contingent, or hypothetical. See Szczepanik, 883 S.W.2d at
650; S.W. Battery Corp. v. Owen, 115 S.W.2d 1097, 1099 (Tex. 1938). Because lost
profits may be difficult to ascertain, courts have held in a variety of situations that lost
profits could not be recovered because there was no evidence to show a plaintiff
would have retained a customer or been awarded a project. See Formosa Plastics
Corp. USA v. Presidio Eng’rs & Contractors, 960 S.W.2d 41, 50 (Tex. 1998)
(holding there was no evidence that plaintiff would have obtained contract had its bid
been lower); Szczepanik, 883 S.W.2d at 650 (holding there was no evidence that
plaintiff could have retained accounts for any period of time because account holders
could transfer accounts at will); Miller v. Bank of Commerce, 387 S.W.2d 691, 692
(Tex. Civ. App.—Fort Worth 1965, no writ) (holding that, because it was not certain
creditor’s effort to collect debt would have been successful, there was no evidence
of damages). 
          Here, the Carter defendants argue that the evidence—as in Szczepanik,
Formosa Plastics and Miller—does not establish that the same prospective employers
or employees would have sought the same placements through Steverson, or that
Steverson would have made the same profits. Thus, they contend that the amount of
damages was not shown by competent evidence with reasonable certainty. Steverson
contends that the amount of damages was explicitly based on an analysis of the
placement fees garnered by the Carter defendants.
          Standards of Review
          When this Court reviews legal sufficiency, we consider only the evidence and
inferences that tend to support the award of damages and disregard all evidence and
inferences to the contrary. Merrel Dow Pharms., Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997). When we review factual sufficiency, we consider and weigh all of
the evidence and will set aside the verdict only if it is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). What constitutes “reasonably certain” evidence of lost
profits is a fact-intensive determination. Szczepanik, 883 S.W.2d at 650. Whether
evidence is speculative or reasonably certain is a factual issue within the exclusive
province of the jury to determine. Vingcard A.S. v. Merrimac Hospitality Sys., Inc.,
59 S.W.3d 847, 863 (Tex. App.—Fort Worth 2001, pet. denied). Reasonably certain
lost profits may be proved by relying on such factors as (1) the experience of the
business principals; (2) the nature of the business; (3) the nature of the market; (4) the
nature of the client base; (5) the sales force; (6) the marketing plan; and (7) the
company’s track record of sales. Id. at 864. The jury is the sole judge of the
credibility of the witnesses and the weight to be given their testimony. Id. This Court
cannot substitute its judgment or opinion for that of the jury. Id.
          Evidence Before the Jury
          We review the legal and factual sufficiency of the evidence together, and set
out all of the relevant evidence, both favorable and unfavorable to the award of
damages. The record reflects that the following evidence was before the jury:
•there are between 800 and 1,000 personnel placement agencies in Houston;
•it is common for employees and employers to use multiple placement
agencies;
 
•Steverson did not have exclusive contracts with any of its applicants or
companies;
 
•Steverson’s database was unique and contained confidential information and
trade secrets;
 
•Steverson developed numerous customer contacts and had access to
companies not easy to access;
 
•Through her employment at Steverson, Carter became familiar with these
customer contacts and companies;
 
•Carter knew the specifications, preferences and history of each company and
the strengths and track record of each applicant with whom she worked;
 
•Piper-Morgan and AEI made no administrative placements before hiring
Carter;
 
•Piper-Morgan and AEI did not have any files or information concerning the
companies or applicants Carter placed;
 
•Carter actively solicited business from her former applicants and companies;
she placed applicants she had cultivated while at Steverson—specifically,
Evelyn Williams, Jan Pollack, Evelyn Hardin, Amanda Riley, Sheri Kelly,
Maxine Bethman, Memery Hughes, Margaret Balsamello, Susie Fowler, Laurie
Otero, Rebecca Carroll, Jasmine Viehe, Evelyn Rider, Felicia Luna, Kim
Muckelroy, Christina Argots, Naomi Hardy, Alsena Brooks, Laurie Davila,
Diane Mauricio, Ann Watson, Deborah Thrash, Debra Benavides, and Kathy
Williamson—at companies with whom she worked while at
Steverson—specifically, Schlumberger, Geoquest, Coast energy, EVCI, PGS
Tensor, Champion Technologies, Sanko America, and Kay Enterprises;
 
•Jan Pollack, one of the named applicants, worked at Sanko America, one of
the named companies; she ended her placement through Steverson on a Friday
afternoon and began her placement through Piper-Morgan on Monday
morning, working at the same job in the same company;
 
•Steverson had “first call” status with Geoquest and a virtual 100% fill ratio
with Schlumberger;
 
•Before hiring Carter, Piper-Morgan and AEI had never placed any of these
named applicants at any job nor had they placed any applicants at any of the
named companies;
 
•None of the applicants testified they would have sought these particular
placements through Steverson had they not obtained them through Piper-Morgan or AEI;
 
•No one from any of these companies testified they would have used Steverson
to make these particular placements, had they not used Piper-Morgan or AEI;
 
•By virtue of her position at Steverson, Carter knew precisely how much each
applicant was paid and how much each company was billed for the applicant’s
services;
 
•Piper-Morgan and AEI consistently paid these applicants slightly more than
they had been paid by Steverson, and charged each company slightly less than
it had been charged by Steverson.

          After considering this evidence, the jury could reasonably have concluded that
Steverson would have placed these specific applicants at the jobs they obtained at
these specific companies had Carter not made the placements, and awarded damages
as a result of that conclusion. We hold that there is legally and factually sufficient
evidence to support the jury’s verdict, and that its verdict is not so contrary to the
great weight and preponderance of the evidence as to be clearly unjust.
          We overrule appellants’ first and second issues.
Remittitur
          In its cross-appeal, Steverson contends that the trial court granted a remittitur
order “not warranted in law or in fact.” Thus, it contends that the court erred in
reducing Steverson’s damage awards. The jury awarded actual damages of $50,000
each against Piper-Morgan and AEI, and $10,000 against Carter. These amounts
were trebled, which resulted in damage awards against Piper-Morgan and AEI of
$150,000 each, and an award of $30,000 against Carter. 
          In its order granting the Carter defendants’ motion for remittitur, the trial court
reduced the total amount of damages awarded against Piper-Morgan to $126,651,
reduced the total amount of damages awarded against AEI to $15,561, and reduced
the total amount of damages awarded against Carter to one cent. The order contains
no reasons for the remittitur, only noting it found the motion for remittitur
“meritorious.” In their motion for remittitur, the Carter defendants argued that Piper-Morgan should have been found liable only for permanent placements, AEI only for
temporary placements, and Carter for neither. The Carter defendants did not make
such a distinction during the trial on the merits; rather, it was clear that the companies
essentially operate as one entity. Thus, this was not a proper basis for remittitur.
          In addition, the Carter defendants argued that there is no evidence of the actual
hours worked by the applicants in many of these placements, and that damages should
only be awarded for those placements in which the hours worked were specifically
identified in Steverson’s exhibit 26, a series of pages recording the work history of
the applicants identified by plaintiffs as its former clients. Evidently the trial court
agreed, because it reduced the amount of actual damages awarded to solely those
amounts reflected in exhibit 26. 
          We review a trial court’s order of remittitur under a factual sufficiency
standard. Rose v. Doctors Hosp., 801 S.W.2d 841, 847 (Tex. 1990). Evidence is
factually insufficient if it is so against the great weight and preponderance of the
evidence as to be manifestly unjust. Cain, 709 S.W.2d at 176. Here, in evaluating
whether the evidence is factually sufficient, our inquiry is twofold. First, we must
determine whether damages may reasonably be awarded when an employee earns an
hourly rate of pay, the start and end dates are known, and the assumption is a 40-hour
work week, but there is no written documentation in the record of the actual number
of hours worked each week by each employee during his or her placement. Second,
we must determine if Steverson’s calculation of lost profits is based on objective
facts, figures, and data. See Helena Chem. Co., 47 S.W.3d at 505.
          Evidence of Actual Hours Worked by Applicants
          The Carter defendants contend that Steverson simply guessed at the total hours
each employee worked, and that this cannot serve as evidence because it is too
speculative. Mike LeJeune, a Steverson director and accountant, reviewed 35 boxes
of records to ascertain damages. The record contains written evidence and testimony
in addition to exhibits 26 and 27 regarding the basis of LeJeune’s calculation of lost
placement fees. Nevertheless, relying on Clary Corp. v. Smith, 949 S.W.2d 452, 470
(Tex. App—Fort Worth 1997, pet. denied), and Small v. Baker, 605 S.W.2d 401, 403
(Tex. Civ. App.—Beaumont 1980, no writ), the Carter defendants assert that when
a damages model is based on an hourly fee, Texas courts require evidence of the
actual number of hours worked. We find these cases distinguishable. Both Clary and
Small addressed the issue of the reasonableness of attorney’s fees. Without knowing
the number of hours the attorney or paralegal worked, the courts could not evaluate
the reasonableness of the fees. Here, in contrast, the assumption that the applicants
worked a 40-hour week in their full-time positions was not unreasonable. The Carter
defendants offered no controverting calculation of damages or any evidence to show
these applicants worked less than 40 hours per week, even though they possessed the
invoices from which they could have shown this. Moreover, there is no authority to
suggest that when there is a written record of a start and end date, but the actual hours
are not set out, that the default is zero hours. Accordingly, we hold that Steverson’s
assumption of a 40-hour work week for full-time employees in its calculation of
damages was reasonable, and that it was not required to provide documentation of
the actual hours each employee worked.
          Reasonably Certain Evidence of Lost Profits
          Lost profits may be supported by evidence reviewed by a witness but not
received into evidence. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex.
1992). In addition to the records contained in plaintiff’s exhibit 26, which 
documents the actual hours attributable to a number of the placements made, LeJeune
reviewed 35 boxes of records during discovery, prepared an accounting of the names,
places worked, start dates, end dates, and hourly rates of pay that is set out in
plaintiff’s exhibit 27. Steverson testified that his calculations were based on all of the
evidence he reviewed; exhibit 27 shows a total of $136,404 in lost placement fees.
          Because this calculation was based on objective data, was not objected to by
the Carter defendants, and was not controverted at trial, we conclude the evidence
was factually sufficient to support the full amount of the jury’s damage awards. 
Therefore, we hold that the trial court erred in ordering a remittitur.
          We sustain cross-appellant’s issue.
          We affirm the trial court’s judgment on the verdict. 
          We vacate the trial court’s order of remittitur.

 


                                                                        /s/ Evelyn V. Keyes
                                                                        Justice


Panel consists of Justices Taft, Keyes, and Higley.