

# NUMBER 13-16-00042-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**HAPPY ENDINGS DOG RESCUE, A TEXAS
NON-PROFIT CORPORATION,**                                     **Appellant,**

**v.**

**JON LAYNE GREGORY, DVM,
AND DONNA J. GREGORY,**                                        **Appellees.**

---

### On appeal from the 414th District Court
### of McLennan County, Texas.

---

# OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Opinion by Justice Rodriguez

A jury awarded $200,000 in damages plus attorney's fees to appellees Jon Layne

Gregory, DVM, and Donna J. Gregory in their suit against appellant Happy Endings Dog

Rescue (Happy Endings).[1]   The Gregories sued Happy Endings for violating a deed restriction which prohibited Happy Endings from running a veterinary clinic or veterinary dispensary at its location.   By seven issues on appeal, Happy Endings challenges the Gregories' pleadings and evidence concerning damages as well as the award of attorney's fees.   We reverse and render.[2]

## I.   BACKGROUND

The following is undisputed.   In 1983, Layne Gregory opened a veterinary practice at 516 North Hewitt Drive in Hewitt, Texas (the Hewitt Drive facility).   His wife Donna managed the office.   In 2006, the Gregories decided to move the practice to a larger site located two blocks away.   Layne was approached by Linda Robinson about purchasing his Hewitt Drive facility for use as a dog rescue.   Robinson and the Gregories agreed to the terms of sale, which included a deed restriction that the property "shall not be used in whole or in part as a veterinary clinic, hospital, or dispensary or as a commercial boarding kennel."

Robinson founded the dog rescue as Happy Endings Dog Rescue, a Texas non-profit company.   Layne agreed to provide discounted veterinary services to the animals at Happy Endings.   In 2008, Layne notified Happy Endings that he would no longer provide veterinary services for the rescue's animals.   Happy Endings hired another

---

[1] The Gregories also filed suit against Linda Robinson, Brian Pardo, and Ocean Shelter Holdings, Ltd. (OSH), which was a company based in the British territory of Gibraltar.   Robinson, Pardo, and OSH were not included in the jury's verdict and are not parties to this appeal.

[2] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to an order issued by the Supreme Court of Texas.   *See* TEX. GOV'T. CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).   Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own.   *See* TEX. R. APP. P. 41.3.

2

veterinarian to work in-house. Around this time, Happy Endings began renovations of the Hewitt Drive facility and also took a lease on an adjacent property. LeAnne Fuller, who was Happy Endings's one-time medical director and an experienced veterinary administrator, testified that Happy Endings originally intended to use the adjacent facility as an animal clinic to offer free veterinary care to accompany rescue and adoption. However, Fuller testified that some months after she joined Happy Endings, its management decided to charge a fee for veterinary care. A separate, for-profit corporation was formed for purposes of running the animal clinic at the adjacent facility, which was also called Happy Endings. Fuller testified that she worked for Happy Endings from 2009 through 2011, and she estimated that Happy Endings had treated roughly six to eight animals per day during that period and charged an average of $100 per visit. Fuller testified that the for-profit animal clinic was initially housed in the adjacent property, but at some point after Fuller left Happy Endings in 2011, renovations to the Hewitt Drive facility were completed and the for-profit Happy Endings clinic was moved into the deed-restricted Hewitt Drive facility, alongside the rescue operation.

The Gregories testified that in 2012 they learned Happy Endings was charging for veterinary services at the deed-restricted facility, though it was disputed when the Gregories learned this fact. It is undisputed, however, that in 2013 the Gregories filed suit against Happy Endings, among others.[3] The Gregories alleged breach of restrictive covenant and sought injunctive relief and unspecified damages. Happy Endings filed

---

[3] Testimony at trial showed the following context: that the original defendants Robinson and Pardo were in a long-term relationship; that Pardo, acting through OSH, had purchased the Hewitt Drive facility from the Gregories in order to provide Robinson with a primary location for the Happy Endings operation; and that Pardo was the primary source of donated funds for the Happy Endings non-profit entity.

3

special exceptions to the Gregories' plea of damages, and the Gregories then filed multiple amended petitions. Among the amendments, the Gregories dropped any claim for injunctive relief. As the suit progressed, Robinson and Happy Endings confirmed that their operation would no longer provide veterinary care for a fee, and that the for-profit Happy Endings corporation was dissolved as a legal entity.[4]

The Gregories also amended their claim for damages. Their live petition at the time of trial pleaded that the deed violations "have caused Plaintiffs damages in an amount not to exceed $200 per day for each day of violation, for which Plaintiffs now sue," citing Texas Property Code section 202.004. *See* TEX. PROP. CODE ANN. § 202.004 (West, Westlaw through 2015 R.S.) (providing the trial court with discretion to award up to $200 in "civil damages" per day to property owners' associations who seek to enforce restrictive covenants in a planned development such as a group of condominiums). The Gregories also pleaded entitlement to exemplary damages, attorney's fees, interest, and prayed for a "judgment against the Defendants and each of them for damages in an amount in excess of the minimum jurisdictional limits of this Court . . . ."

During trial, the Gregories admitted that their claim did not fall within the rule of property code section 202.004 and that they were therefore not eligible to collect $200 per day in statutory penalties provided by that section. *See id.* However, the Gregories asserted that they were entitled to damages in this amount "by analogy" to the statute. They also emphasized Fuller's estimate that Happy Endings had seen an average of six

---

[4] On appeal, neither party argues that the distinction between the for-profit and non-profit Happy Endings entities has any impact on the issues in this case. Since the parties make no arguments concerning this distinction, "nothing is presented for our review," and we will assume this distinction is of no consequence to this appeal. *See Garcia v. State Farm Lloyds*, 287 S.W.3d 809, 820 (Tex. App.—Corpus Christi 2009, pet. denied) (citing TEX. R. APP. P. 38.1).

4

to eight dogs per day at roughly $100 per visit between 2009 and 2011 at the adjacent facility. The Gregories asserted that the same estimate should be assumed to apply from 2011 onward, when Happy Endings operated its animal clinic at the deed-restricted Hewitt Drive facility. Because this revenue had been obtained in violation of the deed restrictions, they argued, it should serve as the jury's basis for awarding damages. During opening argument, the Gregories' trial counsel acknowledged that they would not be attempting to put on any other evidence of damages, such as lost profits sustained by the Gregories' veterinary practice.

After the close of evidence, the jury awarded the Gregories $200,000 in damages. The jury also awarded $44,000 in attorney's fees for proceedings in the trial court and a total of $25,000 for various stages of appeal. The trial court entered judgment on the jury verdict, and this appeal followed.

## II. DISCUSSION

By its first two issues on appeal, Happy Endings challenges the Gregories' pleadings and evidence on damages. First, Happy Endings argues the Gregories failed to plead consequential damages and disgorgement and that the jury's award must be reversed to the extent it is based on these unpleaded and inapplicable theories. Second, Happy Endings argues that the two theories which were pleaded—general compensatory damages and statutory damages—were not supported by any evidence, such as proof of any losses which the Gregories had sustained or evidence that they were eligible for statutory damages. Instead, Happy Endings contends the evidence at trial only comports with disgorgement and "statutory damages by analogy"—two theories which the Gregories did not plead and which are not cognizable in a breach of deed restriction

5

case.   In response, the Gregories argue that the issue of damages was tried by consent and that their evidence was sufficient.

## A.   Damages Pleaded:   Fair Notice and Trial by Consent

By its first issue, Happy Endings argues that the Gregories relied on theories of damages which they did not plead.   "The live pleadings define the issues in a case." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 219 (Tex. 2001).   "The judgment of the court shall conform to the pleadings . . . ."   TEX. R. CIV. P. 301; *see Morton v. Nguyen*, 412 S.W.3d 506, 513 (Tex. 2013) (reversing an award of mental anguish damages because they were not supported by any pleaded claim).   "A plaintiff may not be granted a favorable judgment on an unpled cause of action, absent trial by consent."   *Maswoswe v. Nelson*, 327 S.W.3d 889, 894 (Tex. App.—Beaumont 2010, no pet.) (quoting *Marrs & Smith P'ship v. DK Boyd Oil & Gas Co.*, 223 S.W.3d 1, 18 (Tex. App.—El Paso 2005, pet. denied)); *see Formosa Plastics Corp., USA v. Kajima Intern., Inc.*, 216 S.W.3d 436, 456 (Tex. App.—Corpus Christi 2006, pet. denied).

The rule of trial by consent is limited to those exceptional cases where the parties clearly tried an unpleaded issue by consent.   *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 605 (Tex. App.—Corpus Christi 2005, pet. denied) (en banc). The rule should be cautiously applied and should not be applied in doubtful situations. *Id.*   "An objection to the submission of a jury question on an unpleaded issue prevents the trial of that issue by implied consent."   *Id.*

In the present case, the Gregories' principal claim was breach of restrictive covenant.   The Gregories pleaded that this breach entitled them to an award of statutory damages found in property code section 202.004.   *See* TEX. PROP. CODE ANN. § 202.004.

They also pleaded that the breach resulted in "damages in an amount in excess of the minimum jurisdictional limits of this Court."

Happy Endings emphasizes that the Gregories did not specifically plead a theory of disgorgement. "Disgorgement is an equitable forfeiture of benefits wrongfully obtained . . . ." *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015).[5] In response, the Gregories argue that the issue of damages was tried by consent and that Happy Endings may not now object to any defect in the pleading of damages. The Gregories acknowledge that Happy Endings filed a special exception concerning the unclear pleading of damages. They also acknowledge that Happy Endings filed a motion in limine concerning this issue, made timely objections at trial, moved for instructed verdict, and objected to the inclusion of unpleaded damages in the jury charge. Nonetheless, the Gregories argue that these objections were insufficient because Happy Endings was instead required to obtain a ruling sustaining the special exception. We disagree. "A party is not required to specially except to a pleading defect if it lacks notice of the other party's intent." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 346 (Tex. 2011). One "who is sued on specific theories of recovery is not required to except to the petition and ask whether there are other theories that the pleader wants to allege." *Haynes v. City of Beaumont*, 35 S.W.3d 166, 180 (Tex. App.—Texarkana 2000, no pet.). The Gregories did not plead disgorgement or any cause of

---

[5] Happy Endings also argues that the Gregories failed to plead consequential damages. "Special or consequential damages are damages which a party may recover for breach of contract which are incidental to and caused by the breach and may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract." *Smith v. Renz*, 840 S.W.2d 702, 705 (Tex. App.—Corpus Christi 1992, writ denied). However, it is not clear what significance Happy Endings attaches to this alleged pleading defect, and we need not consider it to resolve this appeal. *See* TEX. R. APP. P. 47.1.

7

action which might otherwise give notice of a potential for disgorgement. *Cf. Henry v. Masson*, 333 S.W.3d 825, 849 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Disgorgement of profits is not a measure of damages available in a breach of contract action. . . . In contrast, disgorgement of profits is an equitable remedy, appropriate for causes of action such as breach of fiduciary duty."). Instead, they pleaded breach of deed restriction, which is often associated with injunctive relief.[6]

Given that Happy Endings was not required to except to a novel theory of damages which they had no reason to anticipate, and given that Happy Endings later made its protest known at the proper times and in various ways, we conclude that this is not one of "those exceptional cases where the parties clearly tried an unpleaded issue by consent." *See UMLIC VP*, 176 S.W.3d at 605. We therefore sustain Happy Endings's first issue. For purposes of legal sufficiency review, we will consider only those forms of damages of which the Gregories' pleadings provided fair notice: general damages and statutory damages. *See Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007).

## B.   Damages Proved:   Legal Sufficiency

By its second issue, Happy Endings argues that the Gregories presented no evidence to support general damages or statutory damages, and that their evidence instead only supports two inapplicable and unpleaded theories:   disgorgement and

---

[6] *See, e.g., Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Jennings v. Bindseil*, 258 S.W.3d 190, 194 (Tex. App.—Austin 2008, no pet.); *Meehl v. Wise*, 285 S.W.3d 561, 564–65 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 691 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 664 (Tex. App.—Austin 2005, no pet.); *Dail v. Couch*, 99 S.W.3d 390, 391 (Tex. App.—Corpus Christi 2003, no pet.); *Truong v. City of Hous.*, 99 S.W.3d 204, 208 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Guajardo v. Neece*, 758 S.W.2d 696, 698 (Tex. App.—Fort Worth 1988, no writ).

"statutory damages by analogy."

In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005). We are mindful that jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 819. Such a legal sufficiency challenge will be sustained only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *See id.* at 810. We review the evidence presented at trial in the light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *Editorial Caballero, SA de CV v. Playboy Enters., Inc.*, 359 S.W.3d 318, 329 (Tex. App.—Corpus Christi 2012, pet. denied).

The Gregories' theory of damages is a novel one. As Happy Endings points out, the Gregories conceded at trial that they did not qualify for statutory damages under the property code and did not intend to produce any evidence of losses sustained as a result of the breach of restrictive covenant. Instead, the Gregories attempted to use the statutory damages and evidence of Happy Endings's gain as substitutes for any showing of the Gregories' losses. Happy Endings argues that this substitution should not be upheld on appeal. We agree.

The Gregories produced no authority supporting their claim for statutory damages

"by analogy." Instead, Texas canons of construction disfavor this position under the facts of this case. The doctrine of *expressio unius est exclusion alterius*—that is, expression of one implies the exclusion of others—is not an absolute rule, but it is a useful aid to determine legislative intent. *See Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999). By statutory definition, chapter 202 applies only in a residential subdivision, planned unit development, condominium or townhouse regime, or similar planned development. *See* Tex. Prop. Code Ann. § 202.001(2) (Westlaw, West through 2015 R.S.). The fact that the Legislature made civil damages expressly available in specific instances suggests that the Legislature did not intend for them to be available, by analogy, in this unrelated instance. *See Mid-Century*, 997 S.W.2d at 274.

As for using evidence of Happy Ending's profits as a substitute for damages, Happy Endings is correct that this evidence best corresponds with disgorgement rather than compensatory damages. Texas authorities make clear that disgorgement of profit is an independent remedy from damages, and the two are not assumed to be interchangeable. "Disgorgement is compensatory in the same sense attorney fees, interest, and costs are, but it is not damages." *Longview Energy*, 464 S.W.3d at 361; *see ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010); *see also Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 439 (5th Cir. 2000) (rejecting a claim that restitution should be the measure of damages under the Truth in Lending Act, absent a specific legislative grant that this should be the case). As we held in a related setting, the "universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage *actually sustained*" by the party. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 779 (Tex. App.—Corpus Christi 2001, no pet.)

(emphasis added); *see also Waldon v. Williams*, 760 S.W.2d 833, 834 (Tex. App.—Austin 1988, no writ). "By the operation of that rule a party generally should be awarded neither less nor more than his actual damages." *Adams*, 41 S.W.3d at 779. This is contrasted with disgorgement, which is properly measured by the defendant's unjust gains, not the plaintiff's loss. *FTC v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326 (11th Cir. 2013) (per curiam); *see Longview Energy*, 464 S.W.3d at 361.

Nor, on a practical level, does disgorgement make a good surrogate for damages. What Happy Endings gained does not necessarily bear a relation to what the Gregories lost, absent any evidence that Happy Endings's customers would have otherwise relied on the Gregories for veterinary care. *See Carter v. Steverson & Co., Inc.*, 106 S.W.3d 161, 166 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (describing potential forms of lost-profit evidence). Without such evidence, "courts have held in a variety of situations that lost profits could not be recovered because there was no evidence to show a plaintiff would have retained a customer or been awarded a project." *Id.* (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 50 (Tex. 1998)). This is particularly true here, given that the Gregories' evidence concerned Happy Endings's revenues, not its profits.

The mismatch between disgorgement and damages is further illustrated by the distinct policies which support each remedy. "The primary objective of awarding damages in civil actions has always been to compensate the injured plaintiff, rather than to punish the defendant." *Smith v. Herco, Inc.*, 900 S.W.2d 852, 861 (Tex. App.—Corpus Christi 1995, writ denied). By comparison, disgorgement is distinct from an award of actual damages in that the disgorgement award serves a separate function of deterring

11

fiduciaries from exploiting their positions of confidence and trust. *See McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 905 (Tex. App.—Dallas 2014, pet. denied). "Because of the strength of the harm principle ([i.e., to] avoid harming others), the ethical case for compensating for losses, whether or not they correspond to gains made by the tortfeasor, is generally thought to be stronger than that for requiring the disgorgement of gains which do not correspond to losses." James J. Edelman, *Unjust Enrichment, Restitution, & Wrongs*, 79 Tex. L. Rev. 1869, 1876 (2001) (internal quotations omitted).

The Gregories claim that without this creative measure of damages, those like Happy Endings will be able to violate deed restrictions with impunity. We disagree. Our sister courts have held that beneficiaries of deed restrictions are uniquely able to pursue injunctive relief. They have held that when the basis of the suit is enforcement of deed restrictions, the party seeking a permanent injunction need not show "irreparable injury" or damages. *Compare Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001) (per curiam) (describing "irreparable injury" and absence of an "adequate remedy at law" as the traditional requirement for injunctive relief at equity) *with Nash v. Peters*, 303 S.W.3d 359, 362 (Tex. App.—El Paso 2009, no pet.) (holding that no showing of an irreparable injury was required when seeking an injunction to enforce of deed restrictions) *and Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (same). The Gregories may well have had this powerful remedy at their disposal. However, they chose to drop their claim for injunctive relief when Happy Endings voluntarily complied and ceased its for-profit operation.

12

In sum, for reasons of law, practical necessity, and policy, we conclude that the Gregories could not substitute irrelevant evidence of Happy Endings's gain for proof of the Gregories' loss. *See Longview Energy*, 464 S.W.3d at 361; *Carter*, 106 S.W.3d at 166; *Adams*, 41 S.W.3d at 779. Likewise, the Gregories could not borrow the measure of an inapplicable statute. *See* TEX. PROP. CODE ANN. § 202.001(2); *Mid-Century*, 997 S.W.2d at 274. Given that the Gregories did not produce any other evidence of damages, we find the evidence legally insufficient to support the jury's award of damages. *See City of Keller*, 168 S.W.3d at 810. We sustain Happy Endings's second issue.

## C.    Other Grounds for Reversal

By its third through sixth issues, Happy Endings offers other grounds for reversal of the jury's award of damages. These issues could offer no greater relief than the issues we have already sustained, and we need not consider them.[7] *See* TEX. R. APP. P. 47.1.

## D.    Attorney's Fees

By its seventh issue, Happy Endings argues that the award of attorney's fees should be reversed because it is dependent upon an award of damages. Section 5.006 provides that in "an action based on breach of a restrictive covenant . . . the court shall allow to a prevailing party who asserted the action reasonable attorney's fees . . . ." *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 73 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (quoting TEX. PROP. CODE ANN. § 5.006(a) (West, Westlaw through 2015 R.S.)). Ordinarily, for the purposes of awarding attorney's fees, we have

---

[7] Among those issues, Happy Endings argued that the Gregories had waived the deed restrictions, that the jury's failure to find waiver was against the great weight and preponderance of the evidence, and that the jury's verdict on compensatory damages was excessive and so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

13

defined the term "prevailing party" as the party who successfully prosecutes an action or successfully defends against an action on the main issue. *Pegasus Energy Grp., Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 128 (Tex. App.—Corpus Christi 1999, pet. denied). Having reversed the Gregories on the main issue in this case—that is, the award of damages—we agree that the award of attorney's fees must be reversed as well. We sustain Happy Endings's seventh issue.

### III.     CONCLUSION

We reverse the judgment of the trial court and render judgment that the Gregories take nothing.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
2nd day of September, 2016.

14